Everett J. BROWN *v.* ALABAMA ELECTRIC COMPANY
and Wausau Insurance Companies

CA 97-469                                             959 S.W.2d 753

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered January 21, 1998

*The Cortinez Law Firm, P.L.L.C.*, by: *Bob Cortinez*, for appellant.

*Anderson & Kilpatrick, L.L.P.*, by: *A. Gene Williams*, for appellees.

JOHN F. STROUD, JR., Judge. Everette J. Brown, an electrician for Alabama Electric Company, arrived at the Potlatch job site in Cypress Bend the morning of July 12, 1994. His foreman asked him to drive to McGehee to get cutting oil. On the way to McGehee at about 8:35 a.m., his company truck left the highway and hit a tree. Mr. Brown was taken to the emergency room of Desha County Hospital and then transferred to Jefferson Regional Medical Center for treatment of a fractured right femur. A urine specimen collected shortly after he arrived at Jefferson Regional was sent to a laboratory for testing. The laboratory analysis, performed by gas chromatography mass spectrometry testing, revealed the presence of marijuana metabolites in the urine.

Alabama Electric and its carrier controverted the claim for workers' compensation benefits, contending that Mr. Brown's injuries were not compensable under the law. Appellees argue that the presence of marijuana in his body at the time of or immediately after the accident raised the statutory presumption that the injury was substantially occasioned by the illegal substance. The administrative law judge awarded benefits after finding that Mr.

Brown sustained his burden of proof by a preponderance of the credible evidence that he had sustained the injury arising out of and in the course of his employment. The Workers' Compensation Commission reversed in a two to one decision, finding that Mr. Brown had not rebutted the statutory presumption that the accident was substantially occasioned by the use of marijuana. Mr. Brown now appeals, contending that 1) there was no substantial evidence to invoke the presumption, and the Commission abused its discretion by invoking the presumption; and 2) the Commission had no substantial basis to deny relief to appellant, and it abused its discretion by disbelieving his testimony and ignoring other evidence of record. We address the issues as appellant presents them.

*I.   There was an absence of substantial evidence to invoke the presumption of Ark. Code Ann. § 11-9-103(b)(iv), and the Commission abused its discretion by invoking the presumption.*

A prima facie presumption existed under our prior workers' compensation law that an injury did not result from intoxication of the injured employee while on duty. Ark. Code Ann. § 11-9-707(4) (1987). Act 796 of 1993 changed that presumption: Arkansas Code Annotated § 11-9-102(5)(B)(iv) (Repl. 1996) now reads in pertinent part:

(B) "Compensable injury" does not include:
. . . .
(iv)(a) Injury where the accident was substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of physician's orders.

(b) The presence of alcohol, illegal drugs, or prescription drugs used in contravention of a physician's orders shall create a rebuttable presumption that the injury or accident was substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of physician's orders.

(c) Every employee is deemed by his performance of services to have impliedly consented to reasonable and responsible testing by properly trained medical or law enforcement personnel for the presence of any of the aforementioned substances in the employee's body.

(d) An employee shall not be entitled to compensation unless it is proved by a preponderance of the evidence that the

alcohol, illegal drugs, or prescription drugs utilized in contravention of the physician's orders did not substantially occasion the injury or accident.

Ark. Code Ann. § 11-9-102(5)(B)(iv) (Repl. 1996).

In its decision, the Commission referred to the statute above and wrote, "In the present claim, the evidence shows that marijuana was present in the Claimant at the time of the injury. Therefore, we begin with the assumption that the Claimant's injury was substantially occasion [sic] by the drug." Appellant presents the threshold issue of whether there was substantial evidence upon which the Commission could base the presumption that the injury was substantially occasioned by marijuana.

Evidence presented at the hearing included a drug-testing report by Dr. H. H. Miller, Ph.D., a pharmacologist and director of toxicology at Corning Clinical Laboratories; deposition testimony of Dr. Henry F. Simmons, Jr., a toxicologist and medical doctor who reviewed Dr. Miller's report; and testimony of appellant.

Appellant testified that he had smoked marijuana about three weeks before the accident but had not done so since, keeping a vow made to his wife on their wedding day, July 1. He denied smoking marijuana the morning of the accident. He stated that he had lost control of the truck when it hydroplaned in a rainstorm.

Dr. Miller's report stated that the level of marijuana metabolites detected in the laboratory analysis was consistent with drug ingestion. His report went on to say, however:

> I cannot determine when, in what manner, in what quantity, or whether legal or illegal drug use occurred. Neither can I draw any conclusions about whether the individual was impaired or intoxicated at the time the specimen was collected. Impairment is a function of the level of the active parent drug which is presented to the central nervous system via the arterial blood supply and bears no relationship to the metabolic level found in the urine.

Dr. Henry Simmons, who reviewed Dr. Miller's report for appellant, testified by deposition as follows:

> The urine tests in and of themselves, at least through the [Department of Transportation] programs, are not used to determine the dose, to determine the dosing time, or determine the point of impairment.
>
> . . . .
>
> There are tests that can be conducted on blood, the results of which would more likely be connected to acute use and impairment than the tests that are conducted on urine.
>
> . . . .
>
> [A blood test] would dramatically narrow the framework. For example, an individual who had a significant quantity of the primary psychoactive ingredient of marijuana that was actually measurable in his blood, namely THC, is an individual who has used the drug within a very short time frame, say minutes to a few hours; as opposed to the presence of metabolites or breakdown products of THC in the urine which could be present under some circumstances for literally weeks after last use.

Under cross-examination, this exchange took place:

> Q. And the level as shown on the July 12, 1994, report is consistent with Mr. Brown having been impaired on that date; is that right, sir?
> A. A better way to state it would be that the presence of the metabolites— in his urine given on July the 12th of '94 [is] consistent with impairment on that day. But by no means specific for impairment.

When questioned about his familiarity with effects of marijuana metabolites on the central nervous system, Dr. Simmons answered, "[M]ore appropriately, not metabolites in general, but the THC itself. Certainly, not all of the metabolites are psychoactive." He stated that THC is the primary component affecting the central nervous system and can, in sufficient dosage, cause problems with perception, balance or coordination, reaction and response time, dizziness and light-headedness, loss of judgment, and possibly involvement in a motor-vehicle accident. He stated that his opinions in this case were based upon his believing appellant's testimony.

On redirect examination, Dr. Simmons said:

> There is nothing about the test that can be conclusively linked by itself to impairment at any particular time. The test alone could just as easily be consistent with not being impaired at all. [One can] not tell from this test whether or not the person was impaired. Absolutely not. You cannot tell from this test whether he was impaired. It would be fair to state that this test is inconclusive as far as whether or not a person was impaired on the date of the accident.

Appellant notes statements by Dr. Miller and Dr. Simmons that urine tests cannot show intoxication or impairment at the time the specimen was taken, and that the tests cannot determine the time or manner of use, the quantity used, or whether usage was legal or illegal. Appellant contends that the report thus did not meet the statutory requirements for "reasonable and responsible testing" by "properly trained medical or law enforcement personnel" of Arkansas Code Annotated § 11-9-102(5)(B)(iv)(c); and that it was not properly certified. Appellant contends that the presence of marijuana metabolites in his urine was not evidence of the presence of marijuana and that, therefore, the presumption that the injury or accident was substantially occasioned by the use of illegal drugs did not arise. *See* Ark. Code Ann. § 11-9-102(5)(B)(iv)(b).

Arkansas Code Annotated section 11-9-102 does not require that the Commission promulgate drug-testing procedures or specify particular types of tests to be used as a precondition to the intoxication presumption. The Arkansas General Assembly could have required testing that would show a certain level of illegal drugs, as it has required to invoke the presumption in D.W.I. cases, but it has not made such a requirement. The Commission has broad discretion with reference to admission of evidence, and its decision will not be reversed absent a showing of abuse of its discretion. We find no abuse of discretion in the Commission's considering the report on urine testing as evidence of the presence of drugs under Arkansas Code Annotated section 11-9-102(5)(B)(iv) (Repl. 1996). Neither do we find that there was an absence of substantial evidence for the Commission to invoke the presumption that appellant's accident was substantially occasioned by the use of marijuana.

*II. The Commission had no substantial basis to deny relief to appellant, and the Commission abused its discretion when it disbelieved his testimony and ignored other evidence of record.*

■    When a claim is denied because a claimant fails to show entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires that we affirm if a substantial basis for the denial of relief is displayed by the Commission's opinion. *Linthicum v. Mar-Bax Shirt Co.*, 23 Ark. App. 26, 741 S.W.2d 275 (1987). It is well established that the credibility of witnesses and the weight to be given their testimony are matters exclusively within the province of the Commission. *Wade v. Mr. C. Cavenaugh's*, 298 Ark. 363, 768 S.W.2d 521 (1989).

Appellant points to statements in the Commission's opinion that the only evidence pertaining to the cause of the accident was appellant's own testimony and that there is no corroborative testimony of how the accident occurred. He contends that the Commission ignored the investigating officer's decision not to mark alcohol and drugs as contributing factors, medical records reporting that he was awake and alert after the accident, and the absence of any notations by medical personnel that would indicate impairment or intoxication.

The Commission addressed in its opinion the question of whether appellant's denial of having used marijuana on the date of the accident was sufficient to constitute a preponderance of the credible evidence and rebut the presumption that the accident was substantially occasioned by the use of marijuana. It is clear that the Commission did not believe appellant's testimony that he had not smoked marijuana in three weeks. Furthermore, the Commission stated, "An admission of prior drug use, a positive drug test on the day of the accident, and two expert toxicologist's testimony that the test results could not pinpoint the time of use does not add up to a preponderance of the evidence that the accident was not substantially [occasioned] by drug use."

■    We cannot conclude that the Commission's decision failed to display a substantial basis for the denial of the claim. Furthermore, the Commission based its decision on the evidence to which it assigned the greater weight.

Affirmed.

BIRD, J, agrees.

AREY, CRABTREE, and ROAF, JJ., concur.

GRIFFEN, J., dissents.

TERRY CRABTREE, Judge, concurring. I concur for the reason stated in my concurrence to *Roberson v. Waste Management*, 58 Ark. App. 11, 15-16, 944 S.W.2d 858, 861-62 (1997).

ANDREE LAYTON ROAF, Judge, concurring. I concur for the reasons stated in my concurring opinion in *Graham v. Turnage Employment Ins. Cos.*, 60 Ark. App. 150, 960 S.W.2d 453 (1998).

AREY, J., joins.

WENDELL L. GRIFFEN, Judge, dissenting.

> *Drug (n.) 1. A substance used in medicine. 2. A substance that acts on the nervous system, such as a narcotic or stimulant, especially one causing addiction.*
> *Illegal (adj.) Against the law.*
> *Presence (n.) 1. Being present in a place.*
> *Present (adj.) 1. Being in the place in question. 2. Being dealt with or discussed. 3. Existing or occurring now.*
> OXFORD AMERICAN DICTIONARY 197, 325, 527 (1980).

How can a statute be strictly construed to excuse a party from meeting its burden of proof regarding a defense to a workers' compensation claim? How can a statute that requires proof of the "presence of . . . illegal drugs" in order to create a rebuttable presumption that an injury or accident was substantially occasioned by the use of "illegal drugs" be strictly construed to create the presumption without proof that a drug is present, not to mention an illegal drug? How can expert testimony that the results of urine testing are inconclusive regarding when illegal drugs were used, what drugs were used, what quantity of illegal drugs were used, and even whether illegal drug use occurred, be deemed proof that marijuana was present so as to create the rebuttable presumption? How can a finding by the Workers' Compensation

Commission that marijuana was present be supported by substantial evidence without proof that marijuana was present?

The urine testing that appellant underwent following his July 12, 1994, single-vehicle accident while performing a work-related errand in a company truck produced positive results for marijuana metabolites. Appellees relied upon those test results to deny appellant's claim for compensation benefits, contending that the positive test results established the presence of illegal drugs. Appellees introduced no other proof to establish the presence of illegal drugs. Appellant argues that the Commission's decision is not supported by substantial evidence, and he challenges the conclusion that marijuana metabolites constitute an illegal drug so as to trigger the rebuttable presumption relied upon by appellees. I would hold that there is no substantial evidence to support the Commission's decision because there is no evidence that marijuana or any other illegal drug was present. Therefore, I would reverse the Commission's decision and remand the case so that benefits could be awarded. The Commission's decision, and the position stated in the prevailing opinion that now affirms it, flies in the face of our obligation to strictly construe the workers' compensation statutes and violates our duty to leave narrowing or broadening the workers' compensation laws to the Arkansas General Assembly.

Arkansas Code Annotated Section 11-9-102(5)(B)(iv)(a) (Repl. 1996), provides that a compensable injury does not include an injury where the accident was substantially occasioned by the use of illegal drugs. Subsection (b) provides that "the presence of . . . illegal drugs" shall create a rebuttable presumption that the injury or accident was substantially occasioned by the use of illegal drugs. Subsection (d) states that an employee shall not be entitled to compensation unless it is proved by a preponderance of the evidence that the illegal drugs did not substantially occasion an injury or accident.

Arkansas Code Annotated Section 11-9-704(c)(2) (Repl. 1996) provides that when deciding any issue, administrative law judges and the Commission shall determine, on the basis of the record as a whole, whether the party having the burden of proof on the issue has established it by a preponderance of the evidence.

Subsection (c)(3) states that administrative law judges, the Commission, and any reviewing courts shall construe the provisions of the workers' compensation law strictly, while subsection (c)(4) provides that in determining whether a party has met the burden of proof on an issue, administrative law judges and the Commission shall weigh the evidence impartially and without giving the benefit of the doubt to any party.

Given this legislative framework concerning the burden of proof, strict construction, and impartial weighing of the evidence, and recognizing that the legislature has plainly declared that if the scope of the workers' compensation statutes is to be liberalized, broadened, or narrowed, then that concern is to be addressed by the General Assembly and not done by administrative law judges, the Commission, or the courts (see Ark. Code Ann. § 11-9-1001), the result now being affirmed is amazing. The appellees accepted the burden of proving the presence of "illegal drugs" when they defended appellant's compensation claim. They produced no proof that "illegal drugs" or any other drugs were present in the urine specimen obtained from appellant shortly after his accident occurred.

None of the expert opinion evidence introduced by appellees established that illegal drugs were present in the urine specimen. Instead, the report prepared by Dr. Harold Miller, a medical toxicologist and pharmacologist consulted by appellees, stated that repeat tests of appellant's urine sample were reported as confirmed positive for marijuana metabolites. Based on that testing, Dr. Miller concluded as follows:

> I cannot determine when, and what manner, and what quantity, or whether legal or illegal drug use occurred. Neither can I draw any conclusions about whether the individual was impaired or intoxicated at the time the specimen was collected. Impairment is a function of the level of activity parent drug which is presented to the central nervous system via the arterial blood supply and bears no relationship to the metabolite level found in the urine.

Appellees also deposed Dr. Henry S. Simmons, a medical doctor who is board certified in emergency medicine and medical toxicology. Dr. Simmons concurred with Dr. Miller that the

results of appellant's urine specimen collected on the date of his accident revealed the presence of marijuana metabolites. However, neither Dr. Miller nor Dr. Simmons stated that the marijuana metabolites were marijuana. Dr. Simmons explicitly stated that there was no proof in appellant's urine test results that tetrahydrocannabinol (THC), the principal psychoactive ingredient in marijuana, was present.

It is beyond dispute that marijuana is an illegal drug; however, appellees produced no proof that marijuana metabolites constitute drugs, not to mention "illegal drugs," anywhere, let alone in Arkansas. The statute upon which they based their defense to appellant's claim plainly requires proof of the presence of "illegal drugs," not metabolites. According to *The Sloane-Dorland Annotated Medical-Legal Dictionary*, a metabolite is any substance produced by metabolism or by a metabolic process. *Id*. at 353 (Supp. 1992). Hence, a marijuana metabolite is a substance produced through the metabolism of marijuana. It makes no more sense to call a marijuana metabolite marijuana than to call carbon monoxide gasoline.

Appellant's argument — that the mere presence of marijuana metabolites in his urine on the day of his accident was not sufficient to trigger the rebuttable presumption — was a direct challenge to the defense based upon the urine testing. If the expert opinions from Dr. Miller and Dr. Simmons prove anything, they show that appellees failed to prove that marijuana was present in appellant when the urine specimen was collected following his accident. That means that there is no substantial evidence to support the Commission's finding that marijuana was present so as to create the rebuttable presumption that appellant's injury was substantially occasioned by illegal drug use.

The Commission erred when it held that appellant was obligated to present proof to overcome the rebuttable presumption. There is no scientific, medical, judicial, statutory, or other basis in the record to justify declaring that marijuana metabolites are marijuana, or that they otherwise are "illegal drugs." Therefore, I respectfully dissent.