Felicia WOOD and Ruth Carolyn Wood *v.*
WEST TREE SERVICE

CA 99-708                                    14 S.W.3d 883

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered April 12, 2000

*Ben E. Rice,* for appellant Felicia Wood.

*Roland E. Darrow II,* for appellant Ruth Carolyn Wood.

*Barber, McCaskill, Jones & Hale, P.A.,* by: *Robert L. Henry, III* and *Richard A. Smith,* for appellee.

TERRY CRABTREE, Judge. On March 4, 1997, George Wood was electrocuted by a downed power line. Mr. Wood was an employee of West Tree Service and was cleaning up debris that was left by a recent tornado. The coroner's report stated that the decedent was struck in the face as an energized wire fell off the tree branch he had picked up.

Mr. Wood's body was taken to Southwest Regional Medical Center where the Coroner's office inspected the body and took blood and urine samples. A bag of marijuana and a package of ZigZag cigarette rolling papers were found in the pockets of Mr. Wood's pants. Tests performed on the samples by the State Crime Lab revealed that marijuana metabolites were present in the samples taken from Mr. Wood's body. These findings were confirmed by the UAMS Toxicology Department.

Appellee, West Tree Service, disputed compensability of the claim of appellant Felicia Wood for dependency benefits, but stipulated that should Mr. Wood's death be ruled compensable, appellant Felicia Wood, Mr. Wood's daughter by a previous marriage, should qualify as a dependent child.

The Workers' Compensation Commission found that the presence of marijuana metabolites in Mr. Wood's system constituted the presence of an illegal drug and therefore invoked the rebuttable presumption found in Ark. Code Ann. § 11-9-102(5)(B)(iv)(b)(Repl. 1996) that Mr. Wood's death was substan-

tially occasioned by the use of marijuana. The full Commission denied benefits on that basis. Appellant asserts three points on appeal: (1) whether the Commission properly performed its function of determining the credibility of the witnesses and the proper weight to be given their testimony; (2) whether the Commission correctly interpreted the testimony of Jimmie Valentine, Ph.D.; and (3) whether substantial evidence exists to support the findings and decision of the Commission. We affirm.

■ This court reviews decisions of the Workers' Compensation Commission to see if they are supported by substantial evidence. *Deffenbaugh Indus. v. Angus*, 39 Ark. App. 24, 832 S.W.2d 869 (1992). Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Wright v. ABC Air, Inc.*, 44 Ark. App. 5, 864 S.W.2d 871 (1993). The issue is not whether this Court might have reached a different result from that reached by the Commission, or whether the evidence would have supported a contrary finding. If reasonable minds could reach the result shown by the Commission's decision, we must affirm the decision. *Bradley v. Alumax*, 50 Ark. App. 13, 899 S.W.2d 850 (1995).

■ It is now clear that testing positive for marijuana metabolites is sufficient to establish a rebuttable presumption that Mr. Wood's injury was substantially occasioned by the use of marijuana. *Brown v. Alabama Electric Co.*, 60 Ark. App. 138, 959 S.W.2d 753 (1998); *Weaver v. Whitaker Furniture Co., Inc.*, 55 Ark. App. 400, 935 S.W.2d 584 (1996). This court has addressed Ark. Code Ann. § 11-9-102(5)(B)(iv) a number of times. It has found that when the urine sample is tested for delta-9-tetrahydrocannabinol, if the result is positive, this evidence establishes the rebuttable presumption.

In both *Brown, supra,* and *Graham v. Turnage Employment Group*, 60 Ark. App. 150, 960 S.W.2d 453 (1998), this court affirmed the Commission's decision denying compensability because metabolites were found in the appellants' urine samples.

■ The appellants argue on appeal that the Commission erred by finding that the testimony of two witnesses, both related to the decedent, did not sufficiently rebut the presumption of intoxication. This argument is without merit. The question of whether the testimony of an interested party is sufficient to rebut the presump-

tion remains a question for the trier of fact. *Lambert v. Gerber Products Co.*, 14 Ark. App. 88, 684 S.W.2d 842 (1985). We cannot find that the Commission erred in its decision.

■ ■ For her second point on appeal, the appellants argue that the Commission misinterpreted the testimony of Jimmie Valentine, Ph.D. It is the function of the Commission to determine the credibility and weight due a witness and his testimony, and its findings as to the inferences to be drawn from the testimony, once made, have the force and effect of a jury verdict. *Service Chevrolet v. Atwood*, 61 Ark. App. 190, 966 S.W.2d 909 (1998). Dr. Valentine was the only expert who testified, and his opinion was that the decedent was impaired at the time of his accident. The appellants did not carry their burden of proving by a preponderance of the evidence that the decedent's death was not substantially occasioned by the use of marijuana.

■ For their third point on appeal, the appellants argue that the Commission's decision was not supported by substantial evidence. Substantial evidence was presented through the toxicology reports and the doctor's testimony. A decision by the Workers' Compensation Commission is not reversed unless it is clear that fair-minded persons could not have reached the conclusion if presented with the same facts. *Golden v. Westark Comm. College*, 333 Ark. 41, 969 S.W.2d 154 (1998). We cannot find that the Commission erred.

Affirmed.

PITTMAN, JENNINGS, BIRD, and NEAL, JJ., agree.

ROAF, J., dissents.

ANDREE LAYTON ROAF, Judge, dissenting. I would reverse and remand this case for an award of benefits in line with the ALJ's opinion in this case. As in *Clark v. Sbarro*, 68 Ark. App. 350, 8 S.W.3d 36 (1999), the circumstances surrounding Mr. Wood's unfortunate accident and death are sufficient to rebut the presumption that his death was substantially occasioned by the use of marijuana.

Once again, the Commission has played fast and loose with the evidence before it in reaching its decision to deny benefits to

Mr. Wood's family. The record reflects that Mr. Wood and his crew were engaged in removing debris and tree limbs from a downed power line that was dead the day before and, while they were working on it again the next morning, the line suddenly became energized. According to Jason Sullivan, the *only witness to testify about the circumstances of this event*:

> I don't know if I was walking under the wire or if I was crossing over it but when it left my hand and hit the ground, it started shooting sparks all over the place. I was like, whoa, and everybody said the line is hot, the line is hot run. ... When I looked up, everybody was scattering. I took off running. I probably ran a quarter or fifty feet and stood up on a big tree that was out of the water so I could find out what was going on. About that time I heard them holler for the decedent and everybody said he was hurt.

According to the coroner, his investigative report stated that Mr. Wood "tried to pick up a tree limb and tried to remove the wire from the limb and ... was struck in the face as the wire fell off the tree branch and the wire was said to have fallen on him."

In his opinion awarding benefits, the ALJ stated:

> Witnesses testified that the power line in question was dead the evening before when they worked on the same right-of-way; however, the next morning when they returned to clear debris at the same site and began working, sparks were noted coming from the line, and everyone shouted that the line was hot and tried to get out of the way, but Decedent Claimant was either struck by the line or was holding the line to move it, about at the time he was fatally injured.

However, the Commission seemed to read a great deal more into the evidence than did the ALJ:

> In the process of clearing the debris an electrical line became energized. Someone shouted that the line was "hot" and everyone managed to get out of the way except the decedent.... Furthermore, the evidence reflects that both Mr. Hall and Mr. Sullivan heeded the warning of the "hot" line, something which claimant did not do.... Mr. Sullivan and Mr. Hall both testified that after being warned of the "hot wire," they were able to avoid it. However, claimant's actions did not prove him to be as nimble.

The first problem with these findings is that William Hall *gave no testimony whatsoever* about the downed power line, but testified only that he saw Mr. Wood changing a tire that morning before commencing work and that he did not appear to be impaired. This inexcusable misstatement of the facts suggests an attempt by the Commission to bolster its entirely speculative and illogical conclusion that, because Mr. Wood was the only person killed by the hot wire, "everyone" else must have "heeded" the warnings and managed to get out of the way of the wire, but that Mr. Wood was not "nimble" enough to do so because of his drug usage.

Of course, the warning shouts came after the line had suddenly become energized and had fallen, not before. According to Mr. Sullivan, the shouts came only after the line left his hand, fell to the ground, and began shooting sparks; he did not have to "avoid" it because it had already fallen onto the ground. Unfortunately, the line fell onto Mr. Wood's face rather than the ground, and he did not survive. I must, however, agree with the Commission's analysis in one respect—Mr. Wood was not "nimble" enough to outrun electricity.

I would reverse and remand for an award of benefits.