Jeremy WALDRIP *v.* GRACO CORPORATION;
FirstComp Insurance Company

CA 07-345                                   270 S.W.3d 891

Court of Appeals of Arkansas
Opinion delivered January 9, 2008

*Cullen & Co. PLLC*, by: *Tim Cullen*, for appellant.

*Frye Law Firm, P.A.*, by: *Cynthia E. Rogers*, for appellees.

JOSEPHINE LINKER HART, Judge. Appellant, the employee-claimant, appeals from the decision of the Arkansas Workers' Compensation Commission finding that he failed to meet his burden of proving by a preponderance of the evidence that marijuana did not substantially occasion his injury. He contends that the Commission's decision was not supported by substantial evidence. We affirm the Commission's decision.

A compensable injury does not include an "[i]njury where the accident was substantially occasioned by" the use of illegal drugs. Ark. Code Ann. § 11-9-102(4)(B)(iv)*(a)* (Supp. 2007). Further, the "presence" of illegal drugs "shall create a rebuttable presumption that the injury or accident was substantially occasioned by" the use of illegal drugs. Ark. Code Ann. § 11-9-102(4)(B)(iv)*(b)*. And finally, an "employee shall not be entitled to

compensation unless it is proved by a preponderance of the evidence that the . . . illegal drugs . . . did not substantially occasion the injury or accident." Ark. Code Ann. § 11-9-102(4)(B)(iv)*(d)*.

On appeal, we view the evidence in a light most favorable to the Commission's decision and affirm if the decision is supported by substantial evidence. *Woodall v. Hunnicutt Constr.*, 340 Ark. 377, 12 S.W.3d 630 (2000). When, as here, the Commission denies coverage because the claimant failed to meet his burden of proof, the substantial-evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* It is the function of the Commission to determine the credibility of the witnesses and the weight to be given to their testimony. *Id.* Whether the rebuttable presumption is overcome by the evidence is a question of fact for the Commission to determine. *Id.*

According to the decision of the administrative law judge (ALJ), whose opinion was adopted by the Commission, an employee-employer-carrier relationship existed on January 25, 2005, when appellant suffered an injury resulting in the amputation of the fingers of his left hand as well as a portion of that hand. The injury occurred during the operation of a press used in the manufacture of gun magazines. During the operation of the press, one person feeds metal into the press, a second operates the press by pressing two buttons simultaneously, and a third catches the product after it is stamped out by the press. Though appellant normally worked in another department, around 11:00 a.m. that day, he was asked to help operate the press by catching the finished product as it was stamped out by the press. Craig ·Westbrook demonstrated the task to appellant and then observed appellant as he also performed the task. According to appellant, Westbrook instructed him never to put his·hand in the press.

Appellant worked at the press for approximately one hour, and after a lunch break, continued to perform his job. But during operation of the press after lunch, material placed in the press became snagged. After the problem was corrected, the press was restarted, and appellant, whose hand was in the press, was injured. Approximately twenty-five hours after the injury, a urine sample was taken from appellant, which showed the presence of marijuana metabolites in an amount greater than 500 ng/mL.

Appellant's expert witness testified that while the urine test does indicate the presence of marijuana metabolites, it does not indicate when appellant used the marijuana, nor whether appellant was impaired at the time of the accident. Appellees' expert witness, however, testified that a report of more than 100 ng/mL of marijuana metabolites in the urine demonstrated an 83% likelihood that the blood level of the THC active compound was above 1 ng/mL, and that this would demonstrate an impaired condition. Further, he testified that given that the level was greater than 500 ng/mL, there would be more than a 95% chance that claimant was impaired at the time of his injury, which would affect judgment, reaction time, perception, cognitive function, and motor control.

In its decision, the Commission adopted the ALJ's decision, which accorded great weight to the testimony of appellees' expert witness. Furthermore, the Commission considered appellant's testimony that he had not smoked marijuana for six days and found that it was not credible, noting that appellant admitted to smoking two to four marijuana cigarettes a day and that he had been smoking marijuana for the five years prior to the accident. Also, the Commission noted that appellant's own expert witness indicated that appellant probably had smoked marijuana within the three or four days prior to the accident, that someone with 500 ng/mL of marijuana metabolites should not work around a press, and that appellant's act of putting his hand in the press despite instructions to the contrary could be consistent with short-term memory loss caused by marijuana. Further, the Commission discounted the testimony of the three witnesses who were present on the day of the injury and who indicated that appellant had not been acting impaired that day.

Appellant challenges the Commission's order. He asserts that the presence of metabolites does not create a rebuttable presumption that the injury or accident was substantially occasioned by the use of illegal drugs, and he relies on his own expert witness's testimony that one could not determine, based on a urine test indicating the presence of metabolites, whether appellant was impaired. He attacks the testimony of appellees' expert witness, contending that it was speculative and not stated with any degree of certainty. Further, he contends that the accident occurred because of his lack of experience and knowledge about the press, and that the direct cause of his injury was the other employee's act of pressing the two buttons to activate the press, when it should

have been apparent to him that appellant's hand was not clear of the machine. He also observes that none of the witnesses testified that appellant seemed impaired.

■ This court has previously concluded that testing positive for marijuana metabolites is sufficient to establish a rebuttable presumption that the employee's injury was substantially occasioned by the use of marijuana. *Wood v. West Tree Service,* 70 Ark. App. 29, 14 S.W.3d 883 (2000); *see also Flowers v. Norman Oaks Constr. Co.,* 341 Ark. 474, 17 S.W.3d 472 (2000) (noting that both the Arkansas Supreme Court and this court have held that the presence of drugs or alcohol established only by metabolites or a slight amount of drugs or alcohol was sufficient to raise the rebuttable presumption and shift the burden of proof to the claimant to rebut the presumption). Moreover, in this case, appellees' expert witness testified that the levels of metabolites in appellant's urine demonstrated that appellant had the THC active compound in his blood. Accordingly, we are compelled to conclude that the rebuttable presumption was created.

■ As for his assertion that we should not credit the testimony of appellees' expert witness, we observe that the Commission was faced with competing expert testimony, and as noted above, it is the Commission's function to weigh the testimony. The Commission gave greater weight to the appellees' expert witness, who opined that there was a 95% chance that appellant was impaired at the time of the accident, and we cannot say that the testimony was, as appellant contends, not substantial.

■ Finally, appellant asserts that there were other factors that could have independently caused the injury. As noted above, the employee must prove by a preponderance of the evidence that the illegal drugs did not substantially occasion the injury or accident. Ark. Code Ann. § 11-9-102(4)(B)(iv)*(d)*. The phrase "substantially occasioned" by the use of illegal drugs requires that there be a direct causal link between the use of the drugs and the injury in order for the injury to be noncompensable. *ERC Contractor Yard & Sales v. Robertson,* 335 Ark. 63, 977 S.W.2d 212 (1998). Here, the Commission credited the testimony that appellant was impaired, that he placed his hand in the press despite instruction to the contrary, and that this was consistent with appellant having impaired judgment from intoxication from marijuana. Thus, we conclude that the Commission's opinion displays

a substantial basis for the denial of relief, as it could conclude that appellant failed to prove that his use of illegal drugs did not substantially occasion his injury.

Affirmed.

PITTMAN, C.J., and GLADWIN, ROBBINS, and BIRD, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. The defining issue in this appeal is whether the Workers' Compensation Commission correctly applied the statutory presumption contained in Ark. Code Ann. § 11-9-102(4)(B)(iv) (Repl. 2002) when it denied benefits to an injured worker after a urine test revealed the presence of marijuana metabolites one day following his workplace injury. The Commission concluded, based on the presence of marijuana metabolites in the worker's urine, that the employer proved the "presence . . . of illegal drugs" so as to justify the rebuttable presumption that the appellant's accident was substantially occasioned by the use of illegal drugs. Because the Commission reasoned that appellant failed to overcome the presumption, it ruled that his injury was not compensable. I would reverse and hold that the presence of a metabolite, which is not an illegal drug, does not justify a presumption that the accident was substantially occasioned by an illegal drug.

Arkansas Code Annotated section 11-9-102(4)(B)(iv)(a) excludes from the definition of "compensable injury" any injury "where the accident was substantially occasioned by the use of . . . illegal drugs." The *presence* of an *illegal drug in the body* creates a rebuttable presumption that the injury or accident was substantially occasioned by that illegal drug. Ark. Code Ann. § 11-9-102(4)(B)(iv)(b). The burden then switches to the claimant to prove by a preponderance of the evidence that the *illegal drug* did not substantially occasion the accident or injury. *See* Ark. Code Ann. § 11-9-102(4)(B)(iv)(d).

It is well-settled that we are to strictly construe the provisions of the workers' compensation code. *See* Ark. Code Ann. §§ 11-9-704(c)(3) (Repl. 2002); 11-9-1001 (Repl. 2002); *Wallace v. West Fraser South, Inc.*, 365 Ark. 68, 225 S.W.3d 361 (2006). The doctrine of strict construction requires us to use the plain meaning of statutory language. *Wallace, supra.* If a term or phrase is not defined by the code, it falls upon the appellate court to define the

terms or phrases in a way that neither broadens nor narrows the scope of the workers' compensation code. *Id.*

In *Brown v. Alabama Electric Co.*, 60 Ark. App. 138, 959 S.W.2d 753, *review denied*, 334 Ark. 35, 970 S.W.2d 807 (1998), and *Graham v. Turnage Employment Group*, 60 Ark. App. 150, 960 S.W.2d 453, *review denied*, 334 Ark. 32, 970 S.W.2d 808 (1998), I dissented from our court's decisions which held that the presence of marijuana metabolites was sufficient proof to trigger the statutory presumption that workplace accidents were substantially occasioned by the use of marijuana. The supreme court denied review in those cases. As I contended almost ten years ago, I reaffirm today that our decisions in this area flagrantly misapply the strict construction standard.

It is beyond argument that a *metabolite* is not the same thing as a *drug. Compare* drug, n.1, *Oxford English Dictionary Online*, http://dictionary.oed.com (accessed Nov. 26, 2007) (hereinafter *"OED Online"*) ("An original, simple, medicinal substance, organic or inorganic, whether used by itself in its natural condition or prepared by art, or as an ingredient in a medicine or medicament" and "Now often applied without qualification to narcotics, opiates, hallucinogens, etc.")[1] *with* metabolite, n., *OED Online* ("A substance that is a substrate or product of a metabolic reaction, or that is necessary to a metabolic reaction"). Therefore, to find that the presence of a metabolite is the same thing as the presence of a drug requires this court to impermissibly broaden the plain and ordinary definition of "drug," which we have been forbidden to

---

[1] *See also* Ark. Code Ann. § 5-64-101(13)(A) (Supp. 2007) (part of the Uniform Controlled Substances Act):

(13)(A) "Drug" means a substance:

(i) Recognized as a drug in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, official National Formulary, or any supplement to any of them;

(ii) Intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or animals;

(iii) Other than food intended to affect the structure or any function of the body of humans or animals; and

(iv) Intended for use as a component of any article specified in subdivisions (13)(A)(i), (ii), or (iii) of this section.

do by the Arkansas General Assembly. *See* Ark. Code Ann. § 11-9-1001. In this instance, our decisions have not only impermissibly broadened that plain and ordinary meaning but turn on construing the word "drug" to mean something that it does not mean. However, at no point has the majority opinion, or any other majority opinion by the Commission or appellate courts in Arkansas, ever offered a different definition of the term "drug." The same holds true concerning the technical word "illegal."

Further, the presence of a metabolite in a person's system is merely proof that a drug was in a person's system *at some point in the past*. Equating proof of a metabolite in the system to the presence (i.e., current existence) of a drug in the system also requires us to stretch the meaning of the statute. *Compare* proof, n., *OED Online* ("Something that proves a statement; evidence or argument establishing a fact or the truth of anything, or belief in the certainty of something; an instance of this"); *with* presence, n., *OED Online* ("The fact or condition of being present"). The construction taken by the Commission and affirmed by the majority operates to presume that a workplace injury to *any* employee with metabolites in his urine has been "substantially occasioned" by the presence of "illegal drugs" although metabolites are neither drugs nor illegal. This is contrary to the intent of the General Assembly, which intended to disqualify those persons who are injured on the job while under the influence of *illegal drugs*. We can derive proof of this intent by the General Assembly's use of the phrase *substantially occasioned*. *See* occasion, v. *OED Online*, ("To be the occasion or cause of; to give rise to, cause, bring about, esp. incidentally"). To hold that the General Assembly intended to disqualify anyone with a history of drug use would, again, require that we impermissibly broaden the scope of the Act.

Instead, the statute provides that the presumption is triggered only by proof showing the *presence* of *illegal drugs* or other illicit substances in the employee's body. Neither *proof* of past illegal drug use nor the presence of a *metabolite* is sufficient to invoke that presumption, as (1) it does not fit the plain meaning of the language used by the legislature and (2) that construction operates to potentially deny workers' compensation benefits to injured workers based on past use of illegal drugs alone and without requiring any other proof that the past drug use made specific workplace injuries more likely. In other words, the statute cannot correctly be construed to support a finding that a workplace

injury was "substantially occasioned by the use of . . . illegal drugs" absent evidence showing the "presence" of "illegal drugs."

The statute now under consideration is the successor to what was originally Ark. Stat. Ann. § 81-1305. That statute provided, in material part, as follows:

> Every employer should secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of employment, without regard to fault as a cause of such injury; *provided, that there shall be no liability for compensation under this Act [§§ 81-1301 - 81-1349] where the injury or death from injury was substantially occasioned by intoxication of the injured employee[.]*

(Emphasis added.)

When the General Assembly enacted the present statute as part of Act 796 of 1993, it clearly shifted the focus from proof that a workplace injury or death "was substantially occasioned by *intoxication* of the injured employee." Rather than requiring proof of "intoxication," the statute now creates a rebuttable presumption that a workplace injury or death has been "substantially occasioned by the use of . . . illegal drugs." However, the presumption is triggered, according to the plain wording of the statute, not by proof of past use of illicit substances, but only by proof of the *presence* of illegal drugs. Otherwise, the General Assembly would have made the presumption dependent simply upon proof of past use of prohibited substances instead of proof that prohibited substances are present for purposes of determining whether those substances substantially occasioned disputed workplace injuries and fatalities.

Contrary to the majority's assertion, our supreme court has never held that the presence of metabolites satisfied the statutory requirement that "illegal drugs" be present so as to invoke the presumption under Ark. Code Ann. § 11-9-102(4)(B)(iv). In *Ester v. National Home Centers, Inc.*, 335 Ark. 356, 981 S.W.2d 91 (1998), the claimant's drug test returned positive for opiates and cocaine metabolites. In holding that the Commission properly applied the presumption, the supreme court observed that the appellant admitted using cocaine three days before the drug test; the metabolites in his system merely corroborated his testimony.

In *Woodall v. Hunnicutt Construction*, 340 Ark. 377, 12 S.W.3d 630 (2000), the claimant's urine test was positive for cocaine metabolites. The appellant in that case admitted smoking crack

cocaine the night before the incident and admitted that he tested positive for a drug screen on the date of the accident. The Commission found that appellant's accident was substantially occasioned by the use of cocaine, and the supreme court affirmed the Commission. In so holding, the supreme court remarked that the appellant's confessions invoked the presumption that the accident was substantially occasioned by cocaine use and did so without holding that the presence of metabolites invoked the presumption.

In *Flowers v. Norman Oaks Construction Co.*, 341 Ark. 474, 17 S.W.3d 472 (2000), our supreme court affirmed the denial of benefits after emergency-room personnel noted that the claimant smelled of alcohol after the accident and the claimant admitted to drinking beer the evening before the accident. It held that the Commission's finding of alcohol was supported by substantial evidence, stating, "[B]oth this court and the court of appeals have held that the presence of drugs or alcohol established only by metabolites or a slight amount of the drugs or alcohol was sufficient to raise the rebuttable presumption and shift the burden of proof to the claimant to rebut the presumption." *Id.* at 480, 17 S.W.3d at 476. However, that statement was merely dictum. The presumption was invoked in that case because of the observations of third parties, not the presence of metabolites.

When it enacted Act 796 of 1993, the General Assembly declared that "many of the changes made by this act were necessary because administrative law judges, the Workers' Compensation Commission, and the Arkansas courts have continually broadened the scope and eroded the purpose of the workers' compensation statutes of this state." Ark. Code Ann. § 11-9-1001. The courts and the Commission were further instructed, "In the future, if such things as . . . the extent to which any physical condition, injury, or disease should be excluded from or added to coverage by the law, or the scope of the workers' compensation statues need to be liberalized, broadened, or narrowed, those things shall be addressed by the General Assembly and should not be done by administrative law judges, the Workers' Compensation Commission, or the courts." *Id.* However, the decisions involving application of this statute constitute judicial mischief that has operated for almost a decade to wrongly disqualify people who have been injured in the workplace. The Commission (including its administrative law judges) and the judges of this court and the supreme court know quite well that metabolites are not illegal and that metabolites are not drugs. Nevertheless, for almost a decade we

have disqualified injured workers from receiving workers' compensation benefits by claiming metabolites to be what they plainly are not and what they have never been, i.e., illegal drugs. One can only hope that our supreme court will finally correct this blatant exercise at judicial legislating rather than perpetuate it. Barring such corrective action by our supreme court, the General Assembly should do so.

Those who decry judicial legislating should take note of our decisions regarding this statute, particularly as those decisions have been made in the face of the strict construction standard and the explicit declaration by the General Assembly regarding its intent when the statute was enacted. If our decisions regarding this statute are legitimate exercises in "strict construction," one wonders why we behave differently in performing "strict construction" regarding other provisions of Act 796 of 1993. How is it, for example, that "strict construction" operates loosely to permit the Commission and appellate courts to construe things that are neither illegal nor drugs as "illegal drugs," but requires a much more exacting analysis when the Commission and appellate courts assess what is an "objective finding" for purposes of establishing a compensable injury? Perhaps even more to the point at hand, why does testimony about the presence of something that is neither illegal nor a drug qualify to trigger the statutory presumption, yet testimony from co-workers about the injured worker's mannerisms and comportment is somehow inadequate to rebut that presumption?

A discernible, and troubling, disparity is evident in the way the Commission and appellate courts have chosen to analyze the proof on this subject. On this subject of workers' compensation law, our "strict construction" disregards the plain and ordinary meaning of the words "illegal" and "drugs." On this subject, we seem unmindful of, if not dismissive toward, reputable sources of authority on those subjects, including the established meaning — both in ordinary usage and the Arkansas Code — of the operative term "drug." Instead of analyzing the issue according to traditional methods of statutory construction by which we respect the existing meaning of terms of art such as "illegal drugs," in this area of workers' compensation law the Commission and appellate courts have resorted to a decidedly uncritical approach to resolving what is, at bottom, a rather elementary issue of logic and statutory construction: whether proof of the presence of something that is not an illegal drug will justify presuming that a disputed workplace

injury or death was substantially occasioned by an illegal drug. If metabolites qualify to trigger the rebuttable presumption despite the fact that they are neither illegal nor drugs, what prevents the Commission and courts from holding that the presumption is triggered by proof of *non-illegal drug use* by an injured worker, even without showing the "presence" of illegal drugs in connection with a specific claim? After all, the majority opinion and our previous decisions allow the statutory presumption to be triggered by proving the presence of non-illegal and non-drug metabolites.

Until the supreme court and/or General Assembly correct our colossal error, the responsibility for illuminating its glaring fallacies and for, possibly, reversing the troubling effect of those decisions, will rest with the attorneys who represent injured workers and with the Commission and its administrative law judges. The Commission (with its administrative law judges to whom evidence in workers' compensation claims is initially presented) is the initial gatekeeper of evidence. As such, testimony such as that from Dr. Light and Mr. Thompson should be rigorously challenged during voir dire to demonstrate that it is not relevant to prove whether an illegal drug is *present* in a person's body. After all, relevant evidence is that evidence that is more likely to render a proposition true. If it is undeniably true that a marijuana metabolite is not a drug and is not illegal, then any testimony about the presence of marijuana metabolites is worthless to prove the proposition on which the statutory presumption rests (that a disputed workplace injury or death was "substantially occasioned by . . . illegal drugs."). Otherwise, in a case in which a statutory presumption depended upon proof that a result was substantially occasioned by gasoline, for example, persons such as Dr. Light and Mr. Thompson might be allowed to present "expert" opinion testimony about the presence of carbon monoxide to establish a rebuttable presumption regarding the presence of gasoline. If such plainly fallacious reasoning is attacked and fully litigated at the Commission level based on the tests in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Farm Bureau Mutual Ins. Co. v. Foote*, 341 Ark. 105, 14 S.W.3d 512 (2000), it should certainly fail.

In the instant case, the Commission relied on Dr. Light's testimony to find that 500 nanograms of marijuana metabolites in appellant's urine demonstrated that his injury was substantially occasioned by the use of illegal drugs despite the fact that metabolites are neither drugs nor illegal. Because I know the difference

between metabolites and illegal drugs, it is clear to me that the proof shows merely the presence of marijuana metabolites, substances that are neither illegal nor drugs. As such, the employer failed to prove "the presence of . . . illegal drugs" so as to trigger the rebuttable presumption that the workplace injury in this case was "substantially occasioned by . . . illegal drugs." Thus, I would either reverse the Commission and remand for a determination of benefits or, alternatively, reverse and remand with instructions that the Commission reconsider the evidence in light of our opinion.

I respectfully dissent.