2012 Ark. App. 48

**Ricky TOWNLEY, Appellant**

v.

**GEORGIA PACIFIC CORPORATION, Indemnity Ins. Co. of North America, and Sedgwick Claims Management, Appellees.**

No. CA 11–797.

Court of Appeals of Arkansas.

Jan. 11, 2012.

Steven R. McNeely, Little Rock, for appellant.

Betty J. Hardy, Little Rock, for appellee.

DOUG MARTIN, Judge.

Appellant Ricky Townley appeals the Arkansas Workers' Compensation Commission's determination that he failed to rebut the presumption that an injury he sustained when his right hand was caught in a machine at work was substantially occasioned by his use of marijuana. Townley argues that the Commission's decision is not supported by substantial evidence. Specifically, Townley maintains that his injury resulted from "defective equipment." We affirm.

Townley was employed by appellee Georgia Pacific Corporation for thirty-four years. At the time of his accident, Townley operated a "twist-and-tuck winder," which embossed and perforated toilet paper. With respect to this particular winder, Townley asserted that he had "been around it all [his] life" and was "very familiar" with the machine. Townley acknowledged that Georgia Pacific's Job Safety Analysis (JSA) contained several instances where employees were warned of the dangers inherent with the winder and instructed to keep their hands and fingers away from the moving parts on the machine.

On November 28, 2009, soon after arriving at work that morning, Townley attended a brief safety meeting concerning the prevention of hand injuries. At the beginning of Townley's shift on the twist-and-tuck winder, the worker on the previous shift told Townley that the winder was "out of time" and that the problem was not resolved. A mechanic was attempting to repair the winder.

Townley testified that he had to press a button on the twist-and-tuck winder to make the machine "jog," meaning a slow speed calculated to turn the rolls on the winder and gradually increase to full speed. In describing the events leading up to his injury, Townley testified, "Well it got hung up on the roll before it went to the perf head, and I was getting the paper.... I was trying—I jogged—I got the paper off, and I hit the jog button. When I hit the jog button, it went like that, and my hand went up in it." According to Townley, the winder moved faster than he had expected and caught him by surprise.

A second mechanic arrived to help the first mechanic repair the winder shortly before Townley's accident. Realizing Townley's hand was caught in the machine, the second mechanic reversed the winder, releasing Townley's hand. Townley was then taken to the safety office, where his hand was examined. The employer also administered a drug test, which revealed that Townley had marijuana in his system. On December 11, 2009, Dr. Rindt diagnosed a fracture with two broken fingers and referred Townley to Dr. Daniels, an orthopedic hand surgeon.

As for the drug-test results, Townley testified, "I made a mistake on Thanksgiving; I am usually not off. We had a little get-together. We were fixing to eat turkey, and Mike passed [a marijuana joint] around. I took a couple hits off of it—some pot." Townley stated that, on that Thursday—two days before his accident—he smoked marijuana, took Vicodin, and drank a few beers. According to Townley, he had taken Vicodin every day for herniated discs in his low back since 2006 or 2007, including the day of his accident. Townley denied smoking marijuana on Friday and did not remember whether he consumed any beer. Townley insisted that he was not still feeling the effects of the marijuana on Friday and was not impaired in any way on Saturday, the day of his accident.

Mike Cain, an operating mechanic, testified that he and another mechanic were attempting to repair the twist-and-tuck winder when they heard Townley "holler" in pain. Cain used a hand wheel to reverse the winder and release Townley's hand. Cain testified that there were two jog buttons on the front of the winder and that workers must press both buttons at the same time "to keep you from putting your hands in the nip point." Cain stated, however, that the winder had only one jog button where Townley's hand was caught. Cain testified that he did not have enough contact with Townley that morning to have an opinion as to whether Townley was impaired.

Gillespie Shawn Meeks, Townley's supervisor, described a "nip point" as "just a point on a machine that could either pinch or grab a body part." Meeks testified that he had often instructed employees not to put their hands in the machines when they were "jogging" them. Also, Meeks stated that the jog speed for the twist-and-tuck winder was thirty-one, meaning that the machine rolled thirty-one feet of paper per minute, and that the machines were thereafter slowed to fifteen. Meeks stated, however, that the jog speed on Townley's winder had been increased to make it "a little faster" because of the maintenance issue. According to Meeks, regardless of the jog speed, employees are not supposed to put their hands in the machines.

According to Meeks, there was only one jog button on the left side of the winder where Townley's hand was injured. Meeks stated that two jog buttons were later installed and had to be pressed simultaneously in order to make the machine jog and to ensure "that both hands are occupied and not in the machine."

Meeks further testified that he saw Townley at the safety meeting but that he "couldn't really tell" whether Townley was impaired. Meeks stated that, if Townley had seemed impaired, he would have sent him home or to human resources. Meeks read from the JSA and noted several points at which employees were instructed to keep their hands clear of the machine and to simply let the paper fall from the nip point. According to Meeks, any employee who put his hand in a machine when he knew it was moving, regardless of the speed, was exercising poor judgment.

Robert Lee Odom, human resources manager, encountered Townley at the safety office shortly after the accident. Odom testified that Townley's injury looked painful but that Townley appeared "very sleepy, you know, his eyes were kind of like he was about to nod off." Odom also noticed that Townley's speech was incoherent. Odom stated that Townley appeared "disoriented," which caused him "a little concern." Odom testified that Townley wanted to go home but that Odom "decided it would be a better thing to have him drug tested." Odom testified that the drug test was administered based on reasonable suspicion of impairment. Odom testified that, following the drug test, Townley told him he took prescription medications. Odom testified that employees were required to notify the employer if their prescription medications warned of drowsiness or other side effects that could impact their ability to operate machinery.

Bradley Stevens Cahn, production leader for tissue converting, testified that he informed employees in March or April 2009 that efforts were underway to reduce jog speeds across the entire department. According to Cahn, the twist-and-tuck winder at issue formerly ran at approximately eighty-two feet per minute. Cahn testified that the machine was originally designed with only one jog button and that the employer subsequently installed dual jog buttons. Cahn stated that, even with two jog buttons, employees were expected to keep their hands out of the machine. Cahn also read from the JSA with respect to the twist-and-tuck winder and noted that employees were repeatedly warned to keep their hands out of the machine. Cahn stated that, when he saw Townley in the safety office, Townley seemed drowsy and was "actually moving his hand quite a bit."

Cahn testified that a SCAT, or Systemic Cause Analysis Tool, was conducted to discern what had caused Townley's accident. Townley was asked to specifically describe what happened immediately prior to his injury, and four to six people subsequently evaluated the situation. Cahn related the team's conclusion that, based on Townley's description of how the injury occurred, there was nothing that would have required Townley to pull the paper out of the winder using his hand. Cahn said, "Typically, if you allow, you know, if you've cut it all the way off, if you allow the roll to rotate, it should fall by gravity right down to the floor."

Cahn opined that it was poor judgment on Townley's part to have put his hand in the winder while it was jogging. Cahn stated that the machines at Georgia Pacific, including the twist-and-tuck winder, have many nip points and that, as a result, it is important for employees to be "clear headed" when they operate or are around the machines.

Townley denied being drowsy on the day of the accident and testified that, if he slurred his words, it was because he had a broken hand and was in shock. Townley also testified that he had worked on the twist-and-tuck winder "thousands of times" prior to his accident and that, up until

April 2009, he was accustomed to operating the winder at a much faster jog speed.

The administrative law judge (ALJ) found that, given the small amount of marijuana in Townley's system, it was "improbable" that Townley was impaired on the day of the accident; rather, the ALJ found that the accident could not have occurred if safety features had been installed on the winder.

In reversing the ALJ's decision, the Commission found that Townley's injury was caused by his poor safety judgment due to impairment, and not because of a "malfunctioning" winder.[1] In reaching this conclusion, the Commission found credible and relied upon testimony from Meeks and Cahn that Townley exercised poor judgment in reaching into the winder while it was moving. In denying benefits, the Commission found that Townley failed to rebut the presumption that his accident and injury were substantially occasioned by his use of marijuana.

In reviewing a decision from the Workers' Compensation Commission, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if the decision is supported by substantial evidence. *White v. Frolic Footwear*, 59 Ark.App. 12, 952 S.W.2d 190 (1997). Substantial evidence exists only if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *White Consol. Indus. v. Galloway*, 74 Ark.App. 13, 45 S.W.3d 396 (2001). The issue is not whether the appellate court might have reached a different result from that of the Commission, but whether reasonable minds could reach the result found by the Commission. *Tex-*

*arkana Sch. Dist. v. Conner*, 373 Ark. 372, 284 S.W.3d 57 (2008). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions of the Commission. *Cedar Chem. Co. v. Knight*, 99 Ark. App. 162, 258 S.W.3d 394 (2007). Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission, and when there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Neal v. Sparks Reg'l Med. Ctr.*, 104 Ark.App. 97, 289 S.W.3d 163 (2008). The Commission is not required to believe the testimony of the claimant or any other witnesses but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.*

Arkansas Code Annotated section 11–9–102(4)(B)(iv) (Supp.2007) provides that "compensable injury" does not include an injury where the accident was substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of a physician's orders. The presence of alcohol, illegal drugs, or prescription drugs used in contravention of a physician's orders creates a rebuttable presumption that the injury or accident was substantially occasioned by the use of such substances. Ark.Code Ann. § 11–9–102(4)(B)(iv)(b). "An employee shall not be entitled to compensation unless it is proved by a preponderance of the evidence that the alcohol, illegal drugs, or prescription drugs utilized in contravention of the physician's orders did not substantially oc-

---

1. The Commission also found that there was "no probative evidence" demonstrating that Townley's accident and injury were substan-

tially occasioned by alcohol or prescription drugs used in contravention of a physician's orders.

casion the injury or accident." Ark.Code Ann. § 11–9–102(4)(B)(iv)(d).

■ Prior to the passage of Act 796 of 1993, it was the employer's burden to prove that an employee's accident was caused by intoxication or drug use. *Express Human Resources III v. Terry*, 61 Ark.App. 258, 968 S.W.2d 630 (1998). Act 796 of 1993 now requires the claimant to prove by a preponderance of the evidence that alcohol or drug use did not substantially occasion the injury. *Id.* Whether a rebuttable presumption is overcome by the evidence is a question of fact for the Commission to determine. *Weaver v. Whitaker Furniture Co.*, 55 Ark.App. 400, 935 S.W.2d 584 (1996).

Townley's contention before the ALJ was that he injured his hand due to "defective equipment," but his argument has evolved to include the absence of certain safety features on the twist-and-tuck winder. Townley maintains that his injury occurred due to Georgia Pacific's failure to lower the jog speed and to install two jog buttons on the winder, and not as a result of his use of marijuana. To the extent Townley's argument is preserved for review, we affirm.

■ There was evidence that Townley's injury occurred through no fault of the twist-and-tuck winder. Both Meeks and Cahn testified that Townley's injury resulted from his poor judgment, regardless of any lack of safety features. Meeks testified that Townley should not have put his hand in the winder, regardless of the jog speed. Cahn testified that, even with two jog buttons, employees were expected to keep their hands away from the moving parts on the machine. The employer's SCAT team closely examined Townley's actions leading up to the accident, as described by Townley, and concluded that Townley should not have, under any circumstances, put his hand in the winder while the winder was moving. Cahn explained that it was not necessary for Townley to reach into the machine with his hand because the paper would automatically fall to the ground once it was cut. Further, the employer's JSA specifically warned employees of nip points and instructed them to keep their hands out of the twist-and-tuck winder. Viewing the evidence in the light most favorable to the Commission's findings and giving the testimony its strongest probative force in favor of the action of the Commission, we hold that reasonable minds could conclude that Townley failed to rebut the presumption that the accident and injury he sustained on the twist-and-tuck winder were substantially occasioned by his use of marijuana, and therefore, his hand injury was not compensable.

■ We also note Townley's assertion that Georgia Pacific administered a "defective non-compliant" drug test following his accident. Townley maintains that, according to the Commission's Rule 099.36 (Rule 36),[2] his drug test should have been reported as negative since the amount of marijuana in his system was below the cutoff

---

2. Rule 36 pertains to a voluntary program for drug-free workplaces and defines "presence of drugs or alcohol" as levels of drugs, alcohol, or metabolites in the body at or above the cutoff levels established by the Department of Transportation, as published in 49 C.F.R. Part 40 and elsewhere. The Code of Federal Regulations sets forth parameters for drug-testing laboratories and requires the laboratories to use specific cutoff concentrations for initial and confirmatory drug tests. 49 C.F.R. § 40.87(a). The initial test cutoff concentration for marijuana metabolites is 50 ng/mL, and the confirmatory test cutoff concentration is 15 ng/mL. 49 C.F.R. § 40.87(a). The Code further provides that, on an initial drug test, "you must report a result below the cutoff concentration as negative." 49 C.F.R. § 40.87(b).

levels established by the Department of Transportation.

Although Townley maintains that this issue was raised below and thus preserved for appellate review, Rule 36 appears to have been raised sua sponte by the ALJ in her written opinion and was neither argued by the parties nor ruled upon by the Commission. We note that the evidence does not establish, as a preliminary matter, that Georgia Pacific is indeed a "Rule 36 Employer" enrolled in the voluntary program for drug-free workplaces. We decline to address an issue that was not fully developed for review. *Finley v. Farm Cat, Inc.*, 103 Ark.App. 292, 288 S.W.3d 685 (2008). Further, Townley is raising this matter for the first time on appeal and failed to get a ruling from the Commission, thus preventing our review on appeal. *Cooper v. Hiland Dairy*, 69 Ark.App. 200, 11 S.W.3d 5 (2000); *Jordan v. Tyson Foods, Inc.*, 51 Ark.App. 100, 911 S.W.2d 593 (1995). Accordingly, we do not address the issue of Rule 36's application to this case.

In any event, both the Arkansas Supreme Court and this court have held that the presence of drugs or alcohol, established only by metabolites or a slight amount of drugs or alcohol, was sufficient to raise the rebuttable presumption that an injury was substantially occasioned by the use of drugs or alcohol. *Flowers v. Norman Oaks Constr. Co.*, 341 Ark. 474, 17 S.W.3d 472 (2000); *Waldrip v. Graco Corp.*, 101 Ark.App. 101, 270 S.W.3d 891 (2008); *Wood v. West Tree Serv.*, 70 Ark. App. 29, 14 S.W.3d 883 (2000). Notwithstanding the fact that the drug test revealed only a small amount of marijuana in Townley's system, the mere presence of marijuana triggered the statutory presumption. It was thereafter Townley's burden to prove that his accident and injury were not substantially occasioned by his use of marijuana. Although Townley claimed he was not impaired, there was evidence to the contrary in that Townley appeared drowsy shortly after his hand was crushed in the winder. Townley failed to call witnesses he had identified to testify that he was not impaired immediately before the accident occurred. The Commission obviously did not believe Townley's explanation that his accident and injury were caused by either the machine's malfunction or the employer's failure to reduce the jog speed and install two jog buttons on the winder. Moreover, the Commission could reasonably conclude that Townley's poor judgment was consistent with impairment from marijuana. We are not convinced that fair-minded persons with the same facts before them could not have reached the same conclusion as the Commission. We affirm because the Commission's decision displays a substantial basis for the denial of relief.

In light of our holding that Townley's injury is not compensable, it is unnecessary to address Townley's arguments concerning his entitlement to temporary total-disability benefits and medical treatment.

Affirmed.

PITTMAN and WYNNE, JJ., agree.