2010 Ark. App. 602

**TELLING INDUSTRIES, Appellant**

v.

**Cornell PETTY, Appellee.**

**No. CA 10–236.**

Court of Appeals of Arkansas.

Sept. 15, 2010.

Heather Goodson Moody, Jim L. Julian, Little Rock, for appellant.

Richard F. Rhodes Jr., Osceola, for appellee.

COURTNEY HUDSON HENRY, Judge.

Appellant Telling Industries appeals the decision of the Arkansas Workers' Compensation Commission awarding appellee Cornell Petty medical and temporary total disability benefits arising from a

work-related accident. For reversal, appellant contends that the Commission erred in finding that appellee rebutted the presumption that the accident was substantially occasioned by the use of an illegal substance. We affirm.

The record of the hearing before the administrative law judge reflects that appellee worked as a "catcher" for the operator of a machine that fabricates c-shaped steel beams that range in length from eight to fifty-five feet. The machine is thirty feet long and ten feet wide, and steel is fed into the machine from a coil that is loaded by crane onto a pillar or "tree" that is positioned ten feet away from the machine. The steel used to produce the beams is wrapped around the coil and, when delivered, the steel is held in place by a band that the operator must sever with bolt cutters in order to insert the steel into the machine. As a catcher, appellee's task was to stand in front of the machine while the operator cut the band, to pick up the loose end of the steel, and then to press a button as the operator fed the steel into the machine. Appellee was also responsible for removing the finished product from the other end of the machine and placing the beams onto a table.

Toward the end of the shift on Tuesday, November 8, 2008, the crane operator loaded a nine-thousand-pound coil of 18–gauge steel onto the pillar servicing the machine operated by Vernon Ross. The pillar actually holds two coils, but only one coil was placed onto the pillar, which caused the pillar to tilt to one side because of the uneven distribution of weight. When Ross cut the band on the coil, the steel began to unravel at a rapid pace, and it struck appellee, lacerating his left forearm. Appellee received treatment at the emergency room and also submitted a urine sample for drug testing. The test revealed the presence of Methadone and Methadone metabolites, but appellee did not have a prescription for that drug. Given the positive test result, appellant controverted appellee's claim seeking medical treatment for a severed tendon in his left forearm and temporary total disability benefits.

In speaking about the accident, Ross testified that the loosened end of the steel normally falls harmlessly to the floor when the band around the coil is cut but that the steel on that occasion unexpectedly "shot out," like the unwinding of a rubber band that is tightly wrapped around a finger. He stated that the steel began to unravel seconds after he cut the band and testified that, once it started, "there just wasn't no stopping it." Ross said that appellee was standing where he was instructed to stand, which he described as the safest place, and he concluded that there was nothing appellee could have done to avoid being injured. Ross believed that he escaped serious injury, perhaps even death, because the steel struck appellee first, which gave Ross time to jump out of the way. Ross said that the event was not a common occurrence with that gauge of steel, and he surmised that it happened because the pillar was unbalanced. He recalled that a similar accident occurred months before, but he explained that the steel unwound on that occasion because he had not locked the coil into place. Ross also testified that a similar machine at the plant was equipped with an arm to keep the steel from coming undone when the band is cut but that his machine did not have such an arm. Because of the danger associated with working with the steel, Ross said that he wore a hard hat, safety glasses, protective gloves, and steel-toed boots. Appellant also provides employees with cotton safety sleeves for their arms, but Ross said that neither he, appellee, nor any other employee was wearing sleeves that day because none were in stock. Ross said that he did not notice

anything unusual about appellee's behavior or reactions on the day of the accident.

Appellee testified that he was standing in position at the front of the machine waiting to press the button when the coil "went haywire." He said that he raised his left arm to shield his neck and that he would have been killed had the steel struck him there. Appellee stated that he had never known a coil to act that way. He testified that he was not wearing safety sleeves that day because none were available. Appellee denied that he was trying to catch the steel as it was unraveling, as stated in the investigative report prepared by his supervisor. He further testified that he spent the weekend before the accident in St. Louis and that his friend gave him a small capful of Methadone on Friday evening for back pain. Appellee said that the drug did not alleviate his discomfort and that it did not affect him. He testified that he worked on Monday and most of the day Tuesday when the accident occurred and that his judgment was not impaired as a result of taking a small dose of the drug the previous Friday.

Brent Sanders, appellee's supervisor, testified that the investigative report stated that appellee was trying to catch the steel unraveling from the coil and that appellee was cited for being inattentive and for failing to wear safety sleeves. He said that he wrote the report after speaking with Ross and others and that appellee reviewed and signed the report the day following the accident. Sanders recalled that they were out of arm guards the week before the accident, but he stated that the sleeves were in supply that day and that he had seen appellee wearing the sleeves earlier during his shift. He detected nothing unusual in appellee's behavior before the accident.

Appellant also presented the testimony of Russell Ford, the plant manager. Ford stated that he did not know whether appellee was wearing safety sleeves at the time of the accident, and he offered the opinion that appellee would not have been injured had he been wearing them. He also testified that arm guards were available that day and that he was not aware of any occasion when sleeves were not in supply. Ford added that it was highly unusual for steel to unravel from the coil.

Dr. Hank Simmons, a toxicologist, reviewed the results of appellee's urine test. He testified that Methadone was an opioid that is prescribed for the treatment of chronic pain. Ingestion of the drug produces feelings of euphoria, indifference, and also sedation, and its usage negatively affects a person's reaction time and the ability to perform safety-sensitive tasks. Simmons said that the test showed Methadone at a concentration level of 2,367 nanograms per milliliter and Methadone metabolites at a level of 1,058 nanograms per milliliter. He testified that the concentration levels did not allow him to draw any conclusions as to appellee's impairment at the time of the accident, but he described the levels as being "pharmacologically significant," meaning that a sufficient amount of the drug had been taken to produce a demonstrable effect. While Simmons could not determine the amount of Methadone that appellee consumed, he did say that appellee had ingested the drug on one or more occasions within a few days of testing. Simmons testified that the drug remained in a person's system longer than the person would experience its intoxicating effects, and he said that a single dose, unless it was a large one, would not produce detectible symptoms the next day. He stated that a person who took an appropriate dose would be able to perform a safety-sensitive job within twenty-four hours of taking the drug and that usage of the drug seventy-two hours before would

not have any effect on the occurrence of a workplace accident. Finally, Simmons testified that, if appellee had ingested the drug on Friday as appellee claimed, the drug would still be in his urine and that the levels shown on the test were consistent with ⌊₆appellee's version of events. He also stated that the test results would be consistent with his having taken the drug closer in time to the accident.

Based on the evidence, the law judge found that appellee presented sufficient proof to overcome the presumption that the injury or accident was substantially occasioned by the use of Methadone. In reaching this decision, the law judge found credible the testimony of the witnesses that the coil began unraveling on its own when the band was cut and that appellee was standing where he was instructed to stand. The law judge also believed the testimony that safety sleeves were not available for use on the day of the accident. Additionally, the law judge accepted appellee's testimony that he ingested the Methadone days before the accident, noting that the levels of the drug shown in the test were consistent with appellee's account. The law judge further found that appellee attempted to shield himself from injury, rather than attempting to catch the unwinding steel, and that his defensive action was prudent and that it prevented injury to Ross. The law judge was also impressed with the testimony that appellee did not appear to be impaired. On appeal, the Commission affirmed and adopted the law judge's opinion.

Before this court, appellant contends that appellee was not entitled to workers' compensation benefits because he failed to rebut the presumption that his injury was substantially occasioned by his illegal drug use. More specifically, appellant maintains that the Commission improperly shifted the burden of proof, allowed appel-

lee to meet the burden of proof with his own testimony, and ignored the expert testimony in reaching its decision.

**▮▮** ⌊₇Our law provides that a compensable injury does not include an "[i]njury where the accident or injury was substantially occasioned by the use of ... prescription drugs used in contravention of a physician's orders." Ark.Code Ann. § 11–9–102(4)(B)(iv)(*a* ) (Supp.2009). The phrase "substantially occasioned by the use of ... prescription drugs used in contravention of a physician's orders" means that there must be a direct causal link between the use of the substance and the injury in order for the injury to be noncompensable. *See ERC Contractor Yard & Sales v. Robertson,* 335 Ark. 63, 977 S.W.2d 212 (1998). Further, the "presence" of prescription drugs used in contravention of a doctor's orders "shall create a rebuttable presumption that the injury or accident was substantially occasioned by" the use of those drugs. Ark.Code Ann. § 11–9–102(4)(B)(iv)(*b* ). The burden is on the employee to prove by a preponderance of the evidence that the prescription drugs utilized in contravention of a physician's orders did not substantially occasion the injury or accident. Ark.Code Ann. § 11–9–102(4)(B)(iv)(*d* ).

**▮▮** Whether the rebuttable presumption is overcome by the evidence is a question of fact for the Commission to determine. On appeal, we view the evidence in a light most favorable to the Commission's decision and affirm if the decision is supported by substantial evidence. *Waldrip v. Graco Corp.,* 101 Ark.App. 101, 270 S.W.3d 891 (2008). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Hickey v. Gardisser Constr.,* 2009 Ark. App. 725, 377 S.W.3d 259. It is the function of the Commission to determine the credibility of the witnesses and the weight to be

given their testimony. *Waldrip, supra.* Once ·the Commission has made its decision on issues of credibility, the appellate court is bound by that decision. *Hickey, supra.*

■ Appellant first contends that the Commission erred by requiring it to prove that the injury was the result of drug use rather than giving it the benefit of the statutory presumption. Appellant advances this argument based on statements made in the Commission's decision that there was no evidence showing that appellee was impaired at the time of the accident. In making these statements, the Commission relied on evidence that appellee discharged his duties without incident on the day in question. In addition, the witnesses who saw appellee before the accident testified that there was nothing unusual in appellee's behavior that would lead them to suspect that appellee was under the influence of a drug. As we read the Commission's opinion, we believe that its statements were nothing more than a fair assessment and commentary on the evidence. Therefore, we disagree with appellant's argument that the Commission disregarded the statutory presumption and misapplied the burden of proof.

■ Next, appellant asserts that the appellee's testimony was not sufficient to rebut the statutory presumption. Appellant suggests that a claimant who admits using drugs but denies being intoxicated at the time of a work-related accident does not meet the burden of proving that the accident was not substantially occasioned by the use of drugs. We find no merit in this argument. It is well settled that the testimony of an interested party is taken as disputed as a matter of law. *Ester v. Nat'l Home Ctrs., Inc.*, 335 Ark. 356, 981 S.W.2d 91 (1998). However, it is also well settled that the credibility of witnesses is a matter completely within the province of the Commission. *Id.* Here, the Commission found credible appellee's testimony that he consumed the Methadone several days before the accident and that he was not under the influence of the drug when the accident occurred. Appellee's account was bolstered by the testimony of Ross and Sanders, also credited by the Commission, that appellee did not appear to be intoxicated at work. Finally, the Commission was also persuaded by the testimony of appellant's expert that the concentration levels of the drug were consistent with appellee's account and that the effects of the drug would have dissipated within twenty-four hours of consumption. As we are bound by the Commission's credibility determinations, we hold that the Commission did not err by accepting appellee's testimony in concluding that appellee successfully rebutted the statutory presumption.

■ Appellant further argues that appellee failed to show that his injury was not directly linked to his drug intoxication. Appellant claims that, although appellee blamed the accident on workplace conditions, the injury occurred because appellee failed to wear safety sleeves. Appellant maintains that coils had unraveled before and that appellee was careless, due to impairment, by not donning the sleeves. When the evidence is viewed in the light most favorable to the Commission's decision, it shows that appellee did nothing to cause the accident, that he could have done nothing to prevent its occurrence, and that the circumstances of the accident were such that he could not have avoided injury. By all accounts, appellee was positioned in the place where he was supposed to stand, and the coil unexpectedly began to unwind at a rapid pace. Contrary to appellant's assertions, the testimony described this as a highly unusual event. As found by the Commission, appellee prudently shielded himself with his arm in order to

escape serious injury, and appellee was not wearing sleeves that day because none were available. We hold that substantial evidence exists to support this aspect of the Commission's decision.

Finally, appellant argues that appellee failed to produce credible evidence from an expert or coworker that he was not intoxicated at the time of the accident. As stated before, appellee testified that he ingested the Methadone several days before the accident and that he was not impaired when the incident occurred. The expert, Simmons, testified that the concentration levels of the drug in appellee's urine were consistent with appellee's testimony. Although Simmons testified that the levels indicated that appellee consumed a significant dose of the drug to produce an intoxicating effect, he also stated that the effects of the drug dissipated within twenty-four hours. Appellee's coworkers testified that appellee did not appear to be intoxicated on the day in question. The Commission found the sum total of this evidence to be credible. While appellant suggests that the Commission erred in so finding, we hold that substantial evidence supports the Commission's decision that appellee rebutted the presumption that the accident or injury was substantially occasioned by the use of Methadone.

Affirmed.

GRUBER and BAKER, JJ., agree.