GENERAL DRIVERS, WAREHOUSE-MAN & HELPERS LOCAL UNION NO. 89 and Robert M. Winstead, Appellants,

v.

Honorable A. B. CHANDLER, III as Attorney General of the Commonwealth of Kentucky and Kentucky Registry of Election Finance, Appellees.

No. 97–CA–1821–MR.

Court of Appeals of Kentucky.

May 15, 1998.

Michael A. Valenti, Louisville, for appellant, Local Union No. 89.

Scott C. Cox, Louisville, for appellant, Robert Winstead.

Bryan Jones, Assistant Attorney General, Frankfort, for appellee, A.B. Chandler, III, Attorney General.

Jon L. Fleishaker, Louisville, for appellee, Kentucky Registry of Election Finance.

Before GUIDUGLI, KNOX and SCHRODER, JJ.

## OPINION

GUIDUGLI, Judge.

This case arises from allegations of wrongdoing arising from the 1995 gubernatorial election. At issue are the respective powers of the Kentucky Registry of Election Finance (the Registry) and the Attorney General of the Commonwealth of Kentucky (the Attorney General).

The Registry is an independent state agency charged with administering, investigating, and enforcing campaign finance laws as codified at KRS Chapters 121 and 121A. Specifically, "all policy and enforcement decisions concerning the regulation of campaign finance shall be the ultimate responsibility of the registry." KRS 121.120(5). KRS 121.120 also provides that the Registry "shall" initiate and make investigations into

complaints of violations either on its own initiative or upon receipt of a complaint and forward any violations of KRS 121 or 121A which could form the basis for a civil or criminal action to the Attorney General or the proper county or Commonwealth Attorney. KRS 121.120(4)(m) and (n). Under KRS 121.140, the Registry is required to investigate all alleged violations of campaign finance law either on its own initiative or upon receipt of a sworn complaint. KRS 121.140(1). "If the registry concludes that there is probable cause to believe that the campaign finance law has been violated knowingly, it shall refer the violation to the Attorney General or the appropriate Commonwealth's or county attorney for prosecution." KRS 121.140(5).

On April 10, 1996, the Registry and the Attorney General entered into a Joint Investigation Agreement (the Agreement) to establish a joint task force to investigate violations of election and campaign finance laws. The agreement stated that investigations conducted by the media as well as the Registry showed that violations of campaign finance and election statutes may have occurred, and that coordination between the Registry and Attorney General was "essential to prevent a substantial duplication of expenses and efforts." The Agreement specifically stated:

1. The Task Force will be operated jointly by the Office of the Attorney General and the Kentucky Registry of Election Finance. All matters in which there is deemed to be only a civil violation of the campaign finance laws will be referred to the Kentucky Registry of Election Finance. All matters in which the Kentucky Registry of Election Finance determines that there is probable cause to believe that a campaign finance statute has been knowingly committed will be referred to the Office of the Attorney General or the appropriate prosecutor.

2. Both the Office of the Attorney General and the Kentucky Registry of Election Finance will commit investigatory, prosecutorial, secretarial, and clerical resources to the Task Force.

Although it is not clear from the record, apparently the Registry became concerned about the role of the Attorney General in conducting the joint investigation. In a letter to the Attorney General dated November 7, 1996, the Registry's Chairman expressed his concern that "because of the Registry's statutory responsibilities to ensure that election finance is adequately policed and regulated, the board believes that we need to be a full partner in this investigation, which includes being kept up to date on the investigation's progress." The letter further provided:

Perhaps our area of greatest concern revolves around the provisions of KRS 121.120(5). As you know, that statute provides that the Registry shall have ultimate responsibility for all "policy and enforcement decisions concerning the regulation of campaign finance." Our review of the circumstances surrounding the adoption in 1992 of the revisions to the statutes regulating election finance has convinced us that this language means what it says and that "all issues" relating to election finance must first come to the Registry for review (KRS Chapters 121 and 121A). As you know, in the past we have worked closely with your office referring to it those cases determined by the Registry to warrant criminal prosecution. Currently, there are six cases pending before your office on criminal referral. In fact, as you probably know, it has not been unusual for cases referred to your office by the Registry to be declined for prosecution. Therefore, I think it safe to say that the Registry has not been reluctant to refer criminal cases for criminal prosecution when warranted.

We must, however, take issue with the perception of some that your office is free to seek an indictment on an election finance matter without first referring the case to the Registry for a probable cause determination. KRS 121.120 explicitly requires this step. I would therefore request your commitment that any election finance issues which you feel warrant prosecution will first be referred to the Registry for a probable cause determination prior to your office's initiating any criminal or civil actions. The General Assembly has

established a specific administrative procedure for enforcement of campaign finance statutes and has charged the Registry with making probable cause determinations. Therefore, it would not be in anyone's best interest to bypass the administrative procedure, especially if such an action might ultimately invalidate the criminal proceeding because an offender was deprived of the opportunity to be heard at the administrative level.

While the matter is not free from doubt, I suggested in our meeting that the involvement of some Registry officials in seeking any Grand Jury subpoenas would probably foreclose challenges to the subpoenas based on the claim that only the Registry had the right to utilize judicial process to investigate election finance violations.

On April 14, 1997, without a probable cause determination having been made by the Registry, the Attorney General filed a motion with the trial court requesting that a special grand jury be empaneled to aid in the criminal investigation of the 1995 state election. The motion stated that the investigation was a joint effort between the Registry and the Attorney General. The motion, in part, further stated:

### CAMPAIGN ACTIVITY BY THE TEAMSTERS

The initial complaint in this investigation contained allegations "of a conspiracy between Danny Ross and the Teamsters Union." At a point in time, Mr. Ross was a staff member of then Lt. Governor Paul Patton, left that position, and assumed a position as an employee of the Teamsters Union. Campaign materials consisting of yard signs, wickets, and bumper stickers were purchased and distributed to Teamsters Union membership. These materials were in support of the Paul Patton and Steven Henry campaign.

As a result of these facts and others, the allegation has been raised that collusion existed between the Patton/Henry campaign and the Teamsters Union. The purpose and motive behind any such collusion would be to subvert applicable campaign spending and election laws.

Investigative efforts in this area to date have located extensive communications between the parties involved. Interviews conducted in the course of this investigation have failed to adequately explain and resolve the issue. Witnesses need to be subpoenaed and sworn testimony obtained in order to ascertain the true facts and circumstances surrounding these allegations.

The trial court entered an order granting the Attorney General's motion on April 4, 1997. On May 9, 1997, appellants, General Drivers, Warehousemen & Helpers Local Union No. 89 and Robert M. Winstead, one of the union's members (collectively the Teamsters) filed a declaratory judgment action with the trial court challenging the power of the Attorney General to conduct an investigation of the Teamsters for alleged campaign violations. The complaint sought a temporary injunction enjoining the Attorney General from investigating and/or prosecuting the Teamsters and a declaratory judgment holding that (1) the Registry has exclusive jurisdiction to initiate investigations of violations of campaign finance laws and determine whether there is probable cause that a knowing violation has occurred; (2) the Registry cannot delegate its authority to investigate and make probable cause determinations; and (3) the Attorney General is acting outside his scope of authority in investigating alleged violations of campaign finance laws in the absence of a probable cause determination from the Registry. The Teamsters filed a separate motion for temporary injunctive relief on May 9, 1997.

On June 2, 1997, the Attorney General and the Registry filed separate motions to dismiss with the trial court. Both appellees argued that the Teamsters could not use the Declaratory Judgment Act (KRS 418, et. seq.) to raise statutory and constitutional arguments since "those claims can be determined in connection with proceedings pending before [the Registry] or in pending criminal proceedings."

The trial court entered an order dismissing the Teamsters' action on June 25, 1997. The

trial court held that KRS 15.243(d) authorized the Attorney General to initiate investigations into alleged campaign finance violations, and that KRS Chapters 15 and 121 authorized the joint probe. The trial court further held:

Under the Plaintiff's theory of the case, the Registry must determine probable cause. Even if this theory is correct, there is no evidence to suggest that the Grand Jury is going to return an indictment before the Attorney General brings the case to the Registry for a probable cause determination. Until such an event happens, the Plaintiffs have not stated a cause of action for which relief may be granted by this Court. Even if the Attorney General is acting outside his authority in this case, the Plaintiffs have not yet and may never be damaged by such actions; therefore, unless an indictment is issued, the Plaintiffs have no standing to pursue this matter.

Further, since there is no case in controversy, the Plaintiffs do not have the proper standing to pursue Counts I–V of the Complaint which deal with the constitutionality of KRS 121, et seq. As outlined in *HealthAmerica Corp. of Kentucky v. Humana Health Plan, Inc.,* Ky., 697 S.W.2d 946, 947 (1985), a party has standing when he or she has a "judicially recognizable interest in the subject matter", which is both "present and substantial." Further, the party must show that it has more than a "mere expectancy" of receiving some benefit from the arbitration of the suit. *Winn v. First Bank of Irvington,* Ky.App., 581 S.W.2d 21, 23 (1978). Since there is no present and justiciable controversy at this time, the parties are not properly before this Court. Therefore, this Court declines to reach the constitutionality issues raised in Counts I–V.

Subsequent to the trial court's order dismissing the Teamsters' action, the Attorney General served a subpoena on one of the Teamsters' employees directing her to appear before the special grand jury. On November 19, 1997, the Teamsters filed a motion to quash the subpoena. In the motion, the Teamsters made the same arguments contained in the declaratory judgment action.

■ The Teamsters allege that the trial court erred in finding that they lack standing to maintain the declaratory judgment action. We disagree.

■ In order for standing to exist, a party must show a legally "recognizable interest in the subject matter of the suit." *HealthAmerica Corp. of Ky. v. Humana Health Plan, Inc.,* Ky., 697 S.W.2d 946, 947 (1985). Furthermore, the party's interest must be determined to be present and substantial as opposed to a mere expectancy. *HealthAmerica,* 697 S.W.2d at 947. Whether a party has standing is to be decided on the facts of the case. *Plaza B.V. v. Stephens,* Ky., 913 S.W.2d 319, 322 (1996).

As the trial court and the appellees have pointed out, the Teamsters argue that they *may* be harmed by the stigma of an indictment *if* an indictment is the ultimate result of the investigation. We are unaware of any indictments which have materialized from this action. Secondly, as the trial court pointed out, there was nothing in the evidence which suggests that the Attorney General would pursue an indictment without seeking a probable cause determination. Given the tone of the letter from the Registry to the Attorney General cited *supra,* it seems highly unlikely that this would occur. As of the time the Teamsters filed their action, there had been no action directed at the Teamsters. Thus, we agree that the Teamsters lacked standing to pursue this matter absent any concrete action taken directly against them.

We are also unpersuaded by the cases cited by the Teamsters in support of their argument. The issue addressed by the Court in *Goodwin v. City of Louisville,* Ky., 309 Ky. 11, 215 S.W.2d 557 (1948), was whether direct judicial relief was available to question the jurisdiction of an agency to act where the plaintiff has not yet exhausted available judicial remedies. *Goodwin* did not deal with the issue of standing as the plaintiff had already been arrested and was facing prosecution. The same is true for *Roberts v. Noel,* Ky., 296 S.W.2d 745 (1956), *Crowder v.*

*Schlitz Brewing Co.,* Ky., 295 Ky. 822, 175 S.W.2d 1003 (1943), *Crowder v. Franklin County Distilling Co.,* Ky., 178 S.W.2d 928 (1944), and *Howard v. Howard,* Ky., 236 Ky. 557, 33 S.W.2d 635 (1930). In all these cases, the parties challenging the jurisdiction of the court already had actions pending against them and the issue of standing was not raised.

*Harrison's Sanitarium, Inc. v. Commonwealth, Department of Health,* Ky., 417 S.W.2d 137 (1967), is also distinguishable. In that case, the plaintiff, who was challenging the validity of regulations pertaining to room sizes in nursing homes, faced either criminal prosecution for failing to comply with the regulations or having to pay unnecessary expenses to comply with a regulation which may later become invalidated. Unlike the Teamsters, the plaintiffs in *Harrison's* would suffer regardless of whether they complied with the regulation or ignored it. Here, the Teamsters only allege that they may suffer if an indictment is issued.

The Teamsters' reliance on *Hancock v. Schroering,* Ky., 481 S.W.2d 57 (1972) and *Hammond v. Smith,* Ky.App., 930 S.W.2d 408 (1996), is misguided. In *Hancock,* the Court was able to hear the case because the fact situation was such that a controversy would never be present to allow for judicial review. In *Hammond,* the issue was whether a justiciable controversy existed, the question of standing was not addressed. As the question of whether a party has satisfied the actual controversy requirement in order to maintain a declaratory judgment action is separate from the question of whether a party has standing to maintain its action,[1] *Hammond* is not helpful to the Teamsters.

 Furthermore, even if we were to find that the Teamsters had standing to maintain their cause of action, we agree with the Registry that the Teamsters have other avenues available through which their concerns may be raised. "The declaratory judgment act cannot be invoked to determine an issue presented in another pending suit." *Schick v. Schick,* Ky., 240 S.W.2d 533 (1951). As noted in the facts, the Attorney General

served a subpoena on one of the Teamsters' employees after the Teamsters filed suit. The Teamsters can raise these exact claims in a motion to quash the subpoena, thus eliminating the need for the declaratory judgment action. The fact that there was or may have been no alternative available at the time the declaratory judgment action was initiated makes no difference. *See Travis v. Pennyrile Rural Electric Cooperative,* 399 F.2d 726 (6th Cir.1968).

Having considered the parties' arguments on appeal, the order of the Franklin Circuit Court is affirmed.

SCHRODER, J., concurs.

KNOX, J., dissents and files a separate opinion.

KNOX, Judge, dissenting.

I respectfully dissent. I recognize that the declaratory judgment act does not ordinarily apply to restrain enforcement of criminal laws. However, given the current posture of this case, I believe that the issues raised by appellants' petition should be expeditiously decided.

The issue in this case relates to the authority of the Attorney General and the Registry to conduct investigations into violations of campaign finance laws. Members of appellant Union are announced targets of the special grand jury convened in Franklin Circuit Court. Since the members of appellant Union are announced targets, I believe that the Teamsters have standing to raise the question of the statutory authority of the Attorney General to conduct the investigation. The question here is not whether the Teamsters have a right not to be investigated, but rather, whether the entity that is carrying on the investigation is authorized to do so.

I realize that the Teamsters have not yet been charged with an offense. But the issue in this case is whether they are being investigated by an office with the statutory authority to do so. I would rule that, as announced targets of the investigation, the Teamsters have standing to question whether the inves-

---

1. *Associated Industries of Ky. v. Commonwealth,* Ky., 912 S.W.2d 947, 951 (1995).

tigation is being conducted according to the applicable statutes.

While it is true that the Teamsters may raise these issues in other proceedings, such as by way of motion to quash subpoenas issued for their members, they appear to have attempted to have done so without avail. As stated in CR 57, the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. While taking no position that the Teamsters are entitled to the relief they request, I believe that since they have not been successful in having the issue they raise heard in the context of other proceedings, they should be heard in this one. I believe the language in *Hammond v. Smith,* Ky. App., 930 S.W.2d 408, 409 (1996), citing KRS 418.080, is particularly applicable here: "[The declaratory judgment statutes are] declared to be remedial; their purpose is to make courts more serviceable to the people by way of settling controversies, and affording relief from uncertainty and insecurity with respect to rights, duties and relations, and are to be liberally interpreted and administered."

More importantly, the trial court's opinion and order contains language which appears to address the merits of the issues raised by the Teamsters, even though the trial court determined that they lacked standing to raise those issues. I believe the trial court's order furnishes added justification for this Court to resolve the issues related to the Attorney General's authority to investigate.