2012 Ark. App. 44

**Matthew L. EDMISTEN, Appellant**

v.

**BULL SHOALS LANDING & AIG Domestic Claims, Inc., Appellees.**

**No. CA 11–313.**

Court of Appeals of Arkansas.

Jan. 11, 2012.

Rehearing Denied Feb. 22, 2012.

Frederick Strawn Spencer, Mountain Home, for appellant.

Jarrod S. Parrish, Little Rock, for appellee.

DAVID M. GLOVER, Judge.

This workers' compensation case is a companion case to *Prock v. Bull Shoals Landing,* 2012 Ark. App. 47, 390 S.W.3d

78, handed down this date. Appellant Matt Edmisten and Greg Prock were injured at work while Edmisten was holding the lid of a fifty-five-gallon drum as Prock opened the drum with a welding torch; the drum exploded, severely burning both Edmisten and Prock. Drug tests showed the presence of marijuana metabolites in Edmisten's body.[1]

The ALJ made several findings: the provisions of the Arkansas Workers' Compensation Act that provide for the establishment of administrative law judges were constitutional; the presence of marijuana metabolites in Edmisten's drug test triggered the statutory presumption that his injuries were substantially occasioned by the use of illegal drugs; and Edmisten failed to rebut that presumption and, therefore, failed to prove that his burn injuries were compensable. The Commission affirmed and adopted the ALJ's opinion. Edmisten now appeals, arguing (1) that the Commission's decision is based upon speculation and conjecture and (2) that the executive branch of the State of Arkansas and private interests have exerted pressure on ALJs and Commissioners that results in actual bias and the appearance of bias by violating the separation-of-powers doctrine and violates the procedural and substantive due-process rights of all injured workers in Arkansas. We affirm.

### Sufficiency of the Evidence

An injury is not a compensable injury if the accident was substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of doctor's orders. Ark.Code Ann. § 11–9–102(4)(B)(iv)(*a* ) (Supp.2009). The presence of alcohol, illegal drugs, or prescription drugs used in contravention of a physician's orders shall create a rebuttable presumption that the injury or accident was substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of a physician's orders. Ark.Code Ann. § 11–9–102(4)(B)(iv)(*b* ). The question of whether an employee has overcome the rebuttable presumption is a question of fact for the Commission. *Systems Contracting Corp. v. Reeves,* 85 Ark.App. 286, 151 S.W.3d 18 (2004). A claimant's testimony is never considered to be uncontroverted. *Nix v. Wilson World Hotel,* 46 Ark.App. 303, 879 S.W.2d 457 (1994).

On appeal, we view the evidence in the light most favorable to the Commission's decision and affirm if the decision is supported by substantial evidence. *Telling Indus. v. Petty,* 2010 Ark. App. 602, 378 S.W.3d 167. When the Commission denies coverage because the claimant failed to meet his burden of proof, the substantial-evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief; substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Waldrip v. Graco Corp.,* 101 Ark.App. 101, 270 S.W.3d 891 (2008). It is the function of the Commission to determine the credibility of the witnesses and the weight to be given their testimony; once the Commission has made its decision on issues of credibility, the appellate court is bound by that decision. *Telling Indus., supra.*

The parties stipulated that the testimony given by Edmisten, Prock, Roger Williams, Mike Didway, Steve Eastwold,

---

1. While there was also morphine in Edmisten's body at the time of the drug test, the ALJ found that no presumption applied to that drug because medical records indicated that Edmisten was administered that drug for his pain upon admission to the Baxter Regional Hospital over thirty minutes prior to the drug test.

and Greg Aaron in Prock's hearing should be admitted at Edmisten's hearing and accorded due weight. This testimony was set forth in *Prock, supra.* All of these witnesses offered additional testimony at Edmisten's hearing.

Greg Prock testified that he had used acetylene torches to open the drums at least fifteen to twenty times before and that his boss, Steve Eastwold, had never objected to his opening the barrels that way. Prock testified that he never saw Edmisten come to work intoxicated and that Edmisten did not appear intoxicated on the morning of the accident. He denied that he and Edmisten had left the dock that day to smoke pot before the accident occurred. Prock admitted that before the accident he smoked pot frequently (three or four times per week) but never with Edmisten. Prock admitted that he did not take the cap off the barrel prior to cutting it but "figured it was empty" because he did not hear anything in it when he picked it up; he also admitted that he did not read the warning labels on the barrels before cutting them with the torch. He confirmed that neither he nor Edmisten wore any safety equipment.

Mike Didway, a co-worker of Edmisten and Prock, testified that he saw both men on the morning of the accident and that neither of them appeared to be intoxicated. However, he also stated that he and another employee were out on the water in a houseboat when the accident occurred, and he did not see what happened. Didway testified that the explosion engulfed a houseboat nearby. Didway said that he had seen Prock open barrels with a cutting torch two or three times before. Didway admitted on cross-examination that he had seen Prock and Edmisten around 7:00 a.m. that morning but did not see Edmisten again that day until after the explosion, and he had no idea what Edmisten had done in that time before the explosion occurred around 9:30 a.m.

Roger Williams, another co-worker of Edmisten and Prock, testified that he was with Didway on the water when the explosion occurred. He relayed that he had not seen or been around Prock or Edmisten prior to the explosion, and he had no idea what Edmisten did between when he clocked in at 6:40 a.m. and when the explosion occurred. He did not recall Edmisten ever coming to work intoxicated, and he testified that he had never seen Prock open a barrel with a cutting torch prior to the day of the explosion.

Gail Hostad testified that she lived by Edmisten's girlfriend and had not seen him appear intoxicated during the evenings when he came to his girlfriend's house; however, she admitted that she had no idea what Edmisten had done the morning of the explosion. Hostad said that she heard that Edmisten had stated after the accident that he could not pass a drug test, but that she had no personal knowledge of Edmisten's drug use or what happened that morning. She explained that she heard that Steve Eastwold, Edmisten's employer, was alleging that Edmisten was intoxicated when the explosion occurred. Hostad said that from what she heard from people in town, it was when Edmisten went back to the boat dock that he said that he could not pass a drug test at that time.

Edmisten testified that he was not intoxicated on the morning of the accident and had not ingested any illegal drug that day. He stated that he had used marijuana once before the date of the accident. He said that he had helped Prock cut the tops out of barrels maybe ten or fifteen times before that day; it was a regular occurrence. He denied that Eastwold had instructed them how to open the barrels. According to him, on that morning, Eastwold told

Prock and him to get a couple of barrels, which they did; he did not hear or feel any sloshing in the barrels when he loaded them into the truck. Edmisten said that they cut the top off the first barrel without any problem, and they were seven to ten inches into the second barrel when it exploded.

Edmisten testified that he was released to return to work on December 11, 2007, and about a month later, he approached Eastwold about returning to work. He stated that Eastwold told him to take a drug test; that Eastwold called and told him that he passed the ₁₆drug test; and that he returned to work the next morning. Edmisten said that he worked for Eastwold for about a month and left to take another job setting up a hardware store. Edmisten stated that he worked at the hardware store until the owner, Jeff Schlote, told him that he needed to take a drug test from Wal–Mart. Edmisten testified that when he wanted to take a drug test at a doctor's office and Schlote refused, he quit.

On cross-examination, Edmisten testified that he did not know if there was oil or gas in the barrels they were cutting, and he denied that Eastwold had told them to use a pneumatic air chisel to open the barrels. He did admit that they did not uncap the barrels that day before they cut into them or use any safety equipment. Edmisten denied that he was in Prock's vehicle that morning. He said that retrieving the barrels was the first thing that he and Prock were told to do that morning. Edmisten also testified that he might have smoked marijuana once or twice around the time of the accident, but he did not recall stating in his deposition that he smoked pot in high school about once a year. He admitted that it was not true that he only smoked pot once in his entire life. He claimed that he did not know

Prock smoked marijuana. Edmisten denied telling both Eastwold and Schlote that he could not pass a drug test.

Greg Aaron, another co-worker of Edmisten and Prock, testified that he had heard Eastwold tell Prock and Edmisten to use an air chisel to take off the tops of the barrels; that Eastwold had shown them how to do it; and that he had never heard Eastwold say it was okay to use an acetylene torch to open the barrels. Aaron testified that regardless of ₁₇how the barrel was opened, it was important to take the cap off and release any pressure inside the barrel.

Jeff Schlote testified that Edmisten's employment with him ended when Edmisten refused to take a drug test; that when he asked Edmisten why, he told Schlote that he was "dirty."

Steve Eastwold testified that on the day of the accident, Edmisten clocked in around 6:30 a.m., Prock arrived at 7:30 a.m., and the explosion occurred after 9:30 a.m. He said that when he first encountered Edmisten and Prock, they were coming down the hill in Prock's Cherokee with Prock driving and Edmisten in the passenger seat. Eastwold said that he asked them to go get a couple of barrels, bring them to the shop, take the "bung holes" out, make sure they were clean, and take the tops off the barrels so they could be used for aluminum scrap. Eastwold recalled that he had specifically told Edmisten and Prock to use an air chisel.

Eastwold testified that when he stopped Prock's vehicle, Edmisten and Prock would not look at him. He said that he did not get close enough to smell them or see the whites of their eyes. Eastwold said that when he and his wife visited Edmisten in the hospital, Edmisten told him that he did not know how he was going to pay for the medical bills, that he was not going to be able to pass the drug test, and that work-

ers' compensation probably would not cover the bills. With regard to Edmisten coming back to work, Eastwold said that he told Edmisten that he would have to take a drug test before coming back to work and that Edmisten told him that he could not pass a drug test that day, that he would have to wait until after the first of the year when he was sure he could pass it. Eastwold said that on the day of the accident, he did not know if Edmisten or Prock were intoxicated, that he was not paying attention to them; he said that other than the fact they would not look at him, he did not think that they had been doing drugs.

Edmisten contends on appeal that the Commission erroneously rested its decision on "complete speculation" that the accident was substantially occasioned by his and Prock's use of illegal drugs because there was no testimony from any witness that he was intoxicated or impaired prior to the explosion. He further contends that Steve Eastwold is an interested party and his testimony was not corroborated and should not be relied upon as a result. We disagree.

This argument is the same argument made in *Prock, supra*, and we adopt the same reasoning that is set forth in that case in affirming the case at bar.

Edmisten cites *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998); *Ward v. Hickory Springs Mfg. Co.*, 97 Ark.App. 311, 248 S.W.3d 482 (2007); and *Continental Express v. Harris*, 61 Ark.App. 198, 965 S.W.2d 811 (1998), as examples in support of his argument that he rebutted the presumption that illegal drugs substantially occasioned his accident. However, in those cases, our appellate courts affirmed the Commission's decisions finding that the presumption had been rebutted. In this case, Edmisten is asking us to reverse the Commission's finding that the presumption was not rebutted. The question of whether an employee has overcome the rebuttable presumption is a question of fact for the Commission. *Systems Contracting Corp., supra.* We cannot say that reasonable persons could not arrive at the Commission's conclusion.

### Constitutional Arguments

Edmisten also argues that the structure of the Commission is unconstitutional, because the "decisional independence" of the ALJs and the Commission has been infringed upon by the executive branch of the State of Arkansas and private interests to the point of actual bias, as well as the appearance of bias, thus violating the separation-of-powers doctrine and his procedural and substantive due-process rights. These arguments have been rejected by our court on numerous occasions. *See Long v. Wal–Mart*, 98 Ark.App. 70, 250 S.W.3d 263 (2007); *see also Sykes v. King Ready Mix*, 2011 Ark. App. 271, 2011 WL 1425033. However, Edmisten's attorney neither acknowledges these precedents in his argument nor attempts to distinguish them.

Affirmed.

PITTMAN, ROBBINS, MARTIN, and BROWN, JJ., agree.

HART, J., concurs.

VAUGHT, C.J., ABRAMSON and HOOFMAN, JJ., agree in part and dissent in part.

RAYMOND R. ABRAMSON, Judge, dissenting in part.

I respectfully dissent for the same reasons set out in my dissenting opinion in the companion case, *Prock v. Bull Shoals Landing*, 2012 Ark. App. 47, 390 S.W.3d 78. The evidence of a direct causal link between drug use and the injury is even

more tenuous in this case because Edmisten was merely holding the barrel top with channel locks (pliers) when the second barrel exploded. His co-worker Prock was generally responsible for welding and using cutting torches for Bull Shoals Landing; Prock operated the acetylene torch to open the barrels on the day of the explosion. Prock was more in charge of completing the assigned task of opening the two barrels, including selecting them, whereas Edmisten was only his helper. Crucially, there was simply no evidence that Edmisten's drug use caused the explosion.

VAUGHT, C.J., and HOOFMAN, J., join in this dissent.

JOSEPHINE LINKER HART, Judge, concurring.

My reason for joining the majority in this case is set out in my concurring opinion in a companion case, *Prock v. Bull Shoals Landing*, 2012 Ark. App. 47, 390 S.W.3d 78, handed down this same day, January 11, 2012. I do note that the administrative law judge, whose opinion was adopted by the Commission, applied to this case the analysis I set out in my *Prock* concurrence.