2012 Ark. App. 47

Greg E. PROCK, Appellant

v.

BULL SHOALS LANDING, American Home Assurance, and AIG Claims Services, Appellees.

No. CA 11–175.

Court of Appeals of Arkansas.

Jan. 11, 2012.

Rehearing Denied Feb. 22, 2012.

Frederick S. Spencer, Mountain Home, for appellant.

Jarrod S. Parrish, Worley, Wood & Parrish, P.A., Little Rock, for appellees.

DOUG MARTIN, Judge.

On November 1, 2007, in his employment for appellee Bull Shoals Landing, appellant Greg Prock was using an acetylene torch to cut the top off of a fifty-five-gallon barrel that had previously contained marine oil when the barrel exploded and caused a fire that seriously injured Prock and his co-worker, Matt Edmisten. Prock and Edmisten were taken to the hospital where they both tested positive for illegal drugs.[1] Prock appeals the Workers' Compensation Commission's opinion finding that Prock failed to rebut the legal presumption that his accident and injury at work were substantially occasioned by his use of marijuana. On appeal, Prock argues that the Commission's decision is not supported by substantial evidence and that the workers' compensation system is unconstitutional.[2] We affirm.

Steve Eastwold, co-owner of Bull Shoals Landing, testified that, on November 1, 2007, he was at the marina's shop when he saw Prock and Edmisten around 8:30 a.m.

---

1. A blood test revealed that Prock had benzodiazepine, opiates, and marijuana in his system. Recognizing that emergency hospital personnel administered certain medications to Prock at the scene of the accident, the Commission focused only on Prock's apparent use of marijuana.

2. This case was previously before the Court of Appeals but was remanded because the Commission's opinion failed to reveal that the Commission considered the testimony of two witnesses who had observed Prock on the morning of the accident. *Prock v. Bull Shoals Landing*, 2010 Ark. App. 724, 2010 WL 4344563.

in Prock's black Jeep coming from a road that led into town. Eastwold stated that he "hollered" at the men to stop but they continued past him. Prock, who was driving, suddenly stopped and backed up the Jeep, and Eastwold asked the two men to get a couple of empty oil barrels from storage and remove the tops from them. Eastwold testified that he told Prock and Edmisten, with respect to the task, "It doesn't have to be [done] today." According to Eastwold, there was no work that Prock and Edmisten could have been performing from the direction they had come in Prock's personal vehicle. Eastwold testified that he was not close enough to Prock and Edmisten to determine whether they were under the influence of drugs, but he recalled that "[t]hey didn't make a lot of eye contact" and that neither man looked at him "straight on."

Eastwold testified that, in the past, he showed Prock how to use a pneumatic air chisel to cut the tops off of barrels. Eastwold stated that the air chisel moves so slowly that it does not generate sparks and that it was the only way he knew to safely remove barrel tops. |3Eastwold testified that he had never seen Prock use an acetylene torch to cut the barrel tops and had never approved that method.

Roger Williams, a mechanic at Bull Shoals Landing, testified that he was on a houseboat on the lake with co-worker Mike Didway when he heard an explosion around 9:40 a.m. and saw what he described as a "huge fireball with two guys in it." According to Williams, the fire from the explosion briefly engulfed a fifty-foot houseboat at the dock. Williams testified that Prock and Edmisten were "pretty much totally on fire." Williams testified that he did not see Prock that morning before the accident occurred. Williams stated that he had never seen employees at Bull Shoals Landing cut the tops off of oil barrels using an acetylene torch, but he had previously witnessed employees cut the tops off of barrels using an air chisel.

Mike Didway, a maintenance worker, testified that he saw Prock and Edmisten that morning in the office where employees typically gathered to drink coffee. Didway testified that he was certain he saw Prock at approximately 7:00 a.m. and that he spoke with Prock "just in passing." Didway stated that Prock did not appear to be intoxicated at that time. Didway testified that he did not see Eastwold around the dock that morning. Didway stated that he had seen Prock cut oil barrels using an acetylene torch on at least one previous occasion. Didway stated that Prock was not the only welder at Bull Shoals Landing but that Prock was the only employee he had ever seen cut the tops off of barrels using an acetylene torch.

|4Matt Edmisten testified that, at Eastwold's request, he and Prock drove to the top of a hill where old oil barrels were stored, that Prock climbed over some trash and threw two barrels to him, and that he put the barrels into the back of a truck owned by the employer. He and Prock then came down from the hill and stopped next to a houseboat where the welding trailer was located. Prock cut the top off the first barrel, and when they moved to the second barrel, Edmisten held the top of the barrel with channel locks to prevent it from falling into the barrel "where there is usually a little bit of oil." Prock was six to eight inches into the cut when the barrel exploded, and Edmisten felt "instant heat on [his] hands and [his] face." Edmisten testified that his "first reaction" was to jump into the lake. When Edmisten emerged from the water, he heard Prock screaming and instructed him to do the same in order to extinguish the flames, which Prock did.

Edmisten further testified that he had seen Prock cut barrels with an acetylene torch many times before the accident occurred and that they had never been cautioned not to open barrels in that manner. While Edmisten initially stated that it was reasonable to use an acetylene torch to open oil barrels because that was the way he "was always told to cut them," he later testified that no one had told him how to cut the tops off the barrels. According to Edmisten, other employees had cut the tops off of barrels with an acetylene torch and, although he identified a couple of employees at Bull Shoals Landing, those individuals were not present at the hearing to testify. Edmisten agreed that pictures of the barrel that exploded depicted the barrel's "bunghole" still capped and admitted that he and Prock "probably" did not remove the cap before cutting the barrel.

Edmisten testified that he "smoked weed maybe once a year" and that he had smoked marijuana a couple of weeks prior to the explosion. Edmisten denied, however, being in Prock's personal vehicle on the morning of the accident, as Eastwold testified. Edmisten testified that Prock did not appear to be impaired that morning and that he had never seen Prock at work when he appeared to be intoxicated or under the influence of drugs. Edmisten stated, "[Prock] did not act any different that morning than he always did." Edmisten denied telling Eastwold, upon his doctor's releasing him to return to work following the accident, that he could not pass a drug test.

According to Prock, his employment at Bull Shoals Landing involved welding, maintenance, and general labor. Prock testified that he arrived at work between 7:00 and 8:00 a.m. on the morning of the accident and walked down to the office at the main dock to drink coffee with the others. Prock stated that, on his way out of the dock area and before he had begun any work that day, he encountered Eastwold, who asked him and Edmisten to get a couple of barrels and cut the tops off of them. According to Prock, he and Edmisten had not been anywhere together that morning in Prock's personal vehicle.

Prock testified that he selected two barrels after tilting them to determine that nothing was inside them and that he then threw the barrels to Edmisten. Prock stated that he did not read the warning label on the barrels because it was common knowledge that the barrels contained marine oil at one time. He testified that, when he cut the tops off of barrels in the past, he did not look inside the barrels because the only thing they might contain is "a little bit of oil." Prock explained that oil will burn, but not explode. Prock acknowledged that a police report indicated that the area around the explosion smelled like gasoline, but Prock insisted that he did not smell any gasoline before the accident. Prock conceded, however, that he did not remove the bunghole cap to vent the barrel or to smell its contents.

Prock testified that he had cut barrels using an acetylene torch on previous occasions and that he was not aware of any alternative method for opening barrels. He specifically denied that Eastwold showed him how to cut the tops off of barrels using an air chisel. According to Prock, there was no air chisel at Bull Shoals Landing. Prock stated that he had never seen anyone else cut barrels using an acetylene torch but that he was unaware of any policy forbidding that method.

Prock further testified that he frequently smoked marijuana, stating that he smoked during the work week after working hours, sometimes as often as three or four days a week. Prock testified, however, that he had stopped smoking marijuana

two weeks prior to the accident because he had received a job offer from a welding shop in Flippin, where he was certain he would be required to take a drug test. Prock could not immediately recall the name of the company that he testified had extended the job offer but finally testified that it was called Metalogic. Prock said he had a formal interview with a man at the welding shop and thought the man's name might be "Steve." Prock claimed that he filled out a job application at Metalogic, but he was unable to produce any documentation at the hearing to support his assertion that he had quit smoking marijuana because he planned to accept the job offer in Flippin.

Contrary to Prock's assertion that he had been offered a job at a welding shop named Metalogic, Eastwold testified that Prock did not give him any notice that he had accepted a job offer elsewhere. Eastwold testified that he knew Kevin Jensen, the owner of Metalogic, and that Jensen had not mentioned that Prock was offered a job there.

Prock testified that, when his doctor released him to return to work, he approached Eastwold about returning to his employment at Bull Shoals Landing. When Prock did not hear back from Eastwold, Prock filed for unemployment benefits. Prock explained that he did not follow up with the job offer in Flippin due to the condition of his hands and their sensitivity to heat. Prock testified that, at the time of the hearing, he worked at a welding shop performing work similar to that performed at the marina.

Greg Aaron, a maintenance worker at Bull Shoals Landing, testified that he was present when Eastwold instructed Prock on how to remove the tops from barrels. According to Aaron, Eastwold told Prock and others to use a pneumatic air chisel to cut the tops off and then demonstrated the process. Aaron testified that the air chisel works like "a big can opener." Aaron opined that the air chisel did not move fast enough to create sparks.

The ALJ found that Prock credibly testified that he had not smoked marijuana on the day of the explosion and noted that none of the witnesses who observed Prock that morning thought he was under the influence of drugs. The ALJ concluded that, although Prock had an illegal drug in his system, the injury was the result of Prock's attempt to quickly finish a task and not the result of impaired judgment caused by marijuana.

In reversing the ALJ's opinion, the Commission specifically discredited Prock's testimony:

> [W]hen we consider all of the evidence in the record, we do not find the claimant to be a credible witness. The claimant lied about being shown how to use the air chisel. He lied about where he was when Mr. Eastwold told him what to do with the barrels. The claimant's lack of personal safety is evident by his failure to even read the warning labels. Finally, we give no credit to his testimony he quit smoking pot as his reasoning for quitting smoking pot two weeks prior cannot be verified in any way, shape or form. We are not persuaded by claimant's testimony that he always used a torch to remove the tops off the barrels as evidence that his marijuana use did not contribute to his injury. On the contrary, this evidence supports the fact of claimant's admitted long-term marijuana use and his lack of personal safety.

The Commission ruled that Prock's denial that he smoked marijuana on the day in question was not sufficient to rebut the presumption that his injury was substantially occasioned by his use of marijuana because his testimony was "filled with in-

consistencies and unexplained evidence." The Commission acknowledged that Prock's claim that he did not smoke marijuana that morning was supported by Edmisten's testimony; however, the Commission found Edmisten's testimony "suspect at best since he also has a pending workers' compensation claim and had a vested interest in the outcome of this litigation." The Commission specifically considered Didway's testimony that Prock did not appear to be intoxicated when he saw him early that morning:

> [T]he testimony of Mr. Didway that the claimant did not appear impaired before the incident is not persuasive enough to overcome the presumption as there were approximately 90 unaccounted for minutes between when the claimant was seen by Mr. Didway and the incident, during which time the claimant was seen in his personal vehicle with Mr. Edmisten, an activity which he denies.

In fact, the Commission chose to disregard Didway's testimony about his observations early that morning, given the time gap for which Prock offered no explanation and Eastwold's |₉description of Prock's and Edmisten's "suspicious behavior" in avoiding eye contact with Eastwold. Further, the Commission specifically found Eastwold to be more credible than Prock and Edmisten concerning the events that transpired on the morning of the accident.

■ In reviewing a decision from the Workers' Compensation Commission, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if the decision is supported by substantial evidence. *White v. Frolic Footwear*, 59 Ark.App. 12, 952 S.W.2d 190 (1997). Substantial evidence exists only if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *White Consol. Indus.*

*v. Galloway*, 74 Ark.App. 13, 45 S.W.3d 396 (2001). The issue is not whether the appellate court might have reached a different result from that of the Commission, but whether reasonable minds could reach the result found by the Commission. *Texarkana Sch. Dist. v. Conner*, 373 Ark. 372, 284 S.W.3d 57 (2008). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions of the Commission. *Cedar Chem. Co. v. Knight*, 99 Ark. App. 162, 258 S.W.3d 394 (2007). Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission, and when there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Neal v. Sparks Reg'l Med. Ctr.*, 104 Ark.App. 97, 289 S.W.3d 163 (2008). The Commission is not required to believe the testimony of the claimant or any other witnesses but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.*

■ Prock argues that the Commission engaged in speculation and conjecture in concluding that the explosion at Bull Shoals Landing and his resulting injury were substantially occasioned by his use of marijuana because no one saw him intoxicated or impaired prior to the explosion. Moreover, Prock maintains that the Commission should not have relied on Eastwold's testimony because he is biased and interested in the outcome of this case.

Arkansas Code Annotated section 11-9-102(4)(B)(iv) (Supp.2007) provides that "compensable injury" does not include an injury where the accident was substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in con-

travention of a physician's orders. The presence of alcohol, illegal drugs, or prescription drugs used in contravention of a physician's orders creates a rebuttable presumption that the injury or accident was substantially occasioned by the use of such substances. Ark.Code Ann. § 11–9–102(4)(B)(iv)(b). "An employee shall not be entitled to compensation unless it is proved by a preponderance of the evidence that the alcohol, illegal drugs, or prescription drugs utilized in contravention of the physician's orders did not substantially occasion the injury or accident." Ark.Code Ann. § 11–9–102(4)(B)(iv)(d).

Prior to the passage of Act 796 of 1993, it was the employer's burden to prove that an employee's accident was caused by intoxication or drug use. *Express Human Resources III v. Terry*, 61 Ark.App. 258, 968 S.W.2d 630 (1998). Act 796 of 1993 now requires the claimant to prove by a preponderance of the evidence that alcohol or drug use did not substantially occasion the injury. *Id.* Whether a rebuttable presumption is overcome by the evidence is a question of fact for the Commission to determine. *Weaver v. Whitaker Furniture Co.*, 55 Ark.App. 400, 935 S.W.2d 584 (1996).

It was not incumbent upon Bull Shoals Landing to produce evidence that Prock was impaired prior to the explosion. Rather, once the presumption arose, it was Prock's burden to prove that the explosion and resulting injury were not substantially occasioned by Prock's use of marijuana. In finding that Prock failed to rebut the presumption, the Commission made specific credibility determinations, whereby the Commission resolved conflicting evidence and arrived at the true facts. *Neal, supra.* The Commission could reasonably conclude that Eastwold's testimony concerning the events leading up to the accident was worthy of belief, whereas testimony by

Prock and Edmisten was not. *See Lambert v. Gerber Prods. Co.*, 14 Ark.App. 88, 684 S.W.2d 842 (1985) (holding that a claimant's testimony is never considered uncontroverted). As for Eastwold's potential financial interest in the outcome of the case, Prock's counsel was permitted to cross-examine Eastwold on the subject; therefore, evidence of possible bias was before the Commission for its consideration. It is implicit in the Commission's decision that the Commission weighed the possible bias that existed on each side of this litigation and simply chose to believe Eastwold's testimony. We are not convinced that fair-minded persons, with the same facts before them, could not reach the same conclusion as the Commission, i.e., that Prock's use of marijuana contributed to the explosion that resulted in Prock's injuries. The dissent would simply have this court substitute its judgment for that of the Commission.

In *Woodall v. Hunnicutt Construction*, 340 Ark. 377, 12 S.W.3d 630 (2000), on a petition for review from this court, our supreme court affirmed the Commission's denial of relief to claimant Woodall where the presumption applied. In that case, the ALJ found that Woodall had rebutted the presumption, but the Commission found, in its de novo review, that Woodall failed to prove by a preponderance of the credible evidence that his accident and injury were not substantially occasioned by his use of cocaine. The Commission found that Woodall's "actions of climbing up on the scaffolding which was not nailed down on his end was a sheer disregard for his own personal safety which strongly suggests impairment resulting from drug use." This court reversed the Commission's decision, and Hunnicutt Construction petitioned our supreme court for review, arguing that the court of appeals used the wrong standard of review and substituted

its own judgment on credibility. Our supreme court agreed with Hunnicutt Construction:

> The bottom line is that the appellant was on a rickety scaffolding and had drugs present in his bloodstream. He fell and was injured. The only question we need address is whether the accident could have happened because of the use of illegal drugs. The answer is, of course, that it could have happened just the way the Commission found. Because of the presumption created by former Ark.Code Ann. § 11–9–102(5)(B)(iv)(b) regarding drug use of the injured worker, which the Commission determined appellant failed to rebut, coupled with this Court's standard of review in workers' compensation cases wherein we do not hear the case *de novo*, but rather affirm the Commission's decision if reasonable men could have reached the same conclusion as the Commission, we must affirm the Commission's denial of benefits to appellant, thereby reversing the Court of Appeals decision in *Woodall v. Hunnicutt Constr.*, 67 Ark.App. 196, 994 S.W.2d 490 (1999).

*Woodall*, 340 Ark. at 382, 12 S.W.3d at 633.

■ Once the Commission has made its decision on issues of credibility, the appellate court is bound by that decision. *Strickland v. Primex Techs.*, 82 Ark.App. 570, 120 S.W.3d 166 (2003). Viewing the evidence, as we must, in the light most favorable to the Commission's findings and giving the testimony its strongest probative force in favor of the action of the Commission, we believe that reasonable minds could conclude that Prock failed to rebut the presumption that the injuries he sustained on November 1, 2007, were substantially occasioned by his use of marijuana and are therefore not compensable. We affirm because the Commission's decision displays a substantial basis for the denial of relief.

■ Next, Prock argues that his constitutional right to due process of law was violated when the Commission disregarded the ALJ's credibility determinations and that the procedure utilized by the Commission violates the separation-of-powers doctrine. This very same constitutional challenge has been rejected by this court many times. *See Stutzman v. Baxter Healthcare Corp.*, 99 Ark.App. 19, 256 S.W.3d 524 (2007); *Rippe v. Delbert Hooten Logging*, 100 Ark.App. 227, 266 S.W.3d 217 (2007); *Murphy v. Forsgren*, 99 Ark.App. 223, 258 S.W.3d 794 (2007); *Long v. Wal–Mart Stores, Inc.*, 98 Ark.App. 70, 250 S.W.3d 263 (2007). Prock does not acknowledge these precedents or make any attempt to distinguish them from his case. Prock does, however, cite *Stiger v. State Line Tire Service*, 72 Ark.App. 250, 35 S.W.3d 335 (2000), wherein this court held that the statute that allows the Commission to make de novo credibility determinations is valid as against a claim that it denies a claimant's right to due process. Prock argues that the Commission failed to consider the factors referenced in *Stiger*, including the "plausibility of the witness's testimony, the consistency of the witness's testimony with the other evidence and testimony, the interest of the witness in the outcome of the case, and the witness's bias, prejudice, or motives." *Stiger*, 72 Ark.App. at 261, 35 S.W.3d at 342. To the contrary, the Commission cited *Stiger* in its opinion and listed the very factors Prock claims the Commission did not consider. Moreover, the Commission's opinion clearly demonstrates that the factors in *Stiger* were considered, albeit not in Prock's favor.

Affirmed.

PITTMAN, ROBBINS, GLOVER, and BROWN, JJ., agree.

VAUGHT, C.J., ABRAMSON, and HOOFMAN, JJ., agree in part and dissent in part.

HART, J., concurs.

RAYMOND R. ABRAMSON, Judge, dissenting in part.

I respectfully dissent from the majority opinion with regard to the application of Arkansas Code Annotated section 11–9–102(4)(B)(iv). As noted in the majority opinion, excluded from the definition of "compensable injury" is an injury where the accident was "substantially occasioned" by the use of alcohol, illegal drugs, or prescription drugs used in contravention of physician's orders. Ark.Code Ann. § 11–9–102(4)(B)(iv)(a). The presence of an illegal drug creates a rebuttable presumption that the injury or accident was substantially occasioned by the use of the drug, see Ark.Code Ann. § 11–9–102(4)(B)(iv)(b), and an employee will not be entitled to compensation unless it is proved by a preponderance of the evidence that the illegal drug did not substantially occasion the injury or accident. See Ark.Code Ann. § 11–9–102(4)(B)(iv)(d).

Here, the Commission's findings and analysis thoroughly address whether Prock had smoked marijuana on the morning of the explosion, and the majority correctly holds that substantial evidence supports a finding that appellant smoked marijuana on that day. What the majority fails to recognize, however, is the lack of evidence that Prock was impaired or that any impairment caused—"substantially occasioned"—the explosion. The Commission erred by ending its analysis with the finding of drug use in this case. Our supreme court has made it clear that in order to find that drugs or alcohol "substantially occasioned" an injury so that it is noncompensable, there must be a direct causal link between the use of the drugs or alcohol and the injury. *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 71, 977 S.W.2d 212, 216 (1998).

In the only part of its opinion that addresses the required direct causal link between the marijuana and the injury, the Commission stated:

> We are not persuaded by claimant's testimony that he always used a torch to remove the tops off the barrels as evidence that his marijuana use did not contribute to his injury. On the contrary, this evidence supports the fact of claimant's admitted long-term marijuana use and his lack of personal safety.

However, the Commission apparently credited a co-worker's testimony that this is how Prock always unsealed the barrels: "Mr. Didway confirmed that the claimant had cut barrels open with a cutting torch previously. However, he stated that he would not have used this method." In fact, Didway testified that the reason he would not use a cutting torch to open a barrel is that he did not know how to operate one. Even if this was not the preferred method—indeed, it was a dangerous method—there is still no direct causal link between the use of drugs and the explosion. The Commission simply assumed that, because it found that Prock had smoked marijuana, he was impaired and his impairment caused the accident. But the ingestion of drugs in and of itself is not a sufficient basis for denying benefits if there is no evidence that the drug use was the direct cause of the accident. Here, without more evidence, reasonable minds could not conclude that Prock's injury was substantially occasioned by his marijuana use without resorting to speculation.

Substantial evidence exists only if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *Lohman v. SSI, Inc.*, 94 Ark.App. 424, 427, 232 S.W.3d 487, 490 (2006). Conjecture and speculation, even if plausible, cannot take the place of proof. *Id.* Here, the evidence shows that Prock had used a cutting torch to open similar barrels on other occasions, including a barrel opened without incident immediately before the explosion. The Commission had to resort to speculation or conjecture to conclude that the use of marijuana caused this accident because there was no evidence of impairment and *no* evidence that drug use caused this accident. *Compare Waldrip v. Graco Corp.*, 101 Ark.App. 101, 270 S.W.3d 891 (2008) (employer's expert testified regarding the likelihood that appellant was impaired; Commission credited the testimony that appellant was impaired, that he placed his hand in the press despite instruction to the contrary, and that this was consistent with appellant having impaired judgment from intoxication from marijuana). To the contrary, this was by all accounts an inherently dangerous activity, and the barrel likely would have exploded whether or not Prock had been impaired. Whether opening the vents on the barrels would have prevented the accident, as the concurrence suggests, is yet another matter of speculation, as there was a dearth of expert testimony concerning the cause of the explosion.

Although the appellate court defers to the Commission on issues involving the weight of the evidence and the credibility of the witnesses, the Commission may not disregard testimony and is not so insulated as to render appellate review meaningless. *McDonald v. Batesville Poultry Equipment*, 90 Ark.App. 435, 442, 206 S.W.3d 908, 913 (2005) (citing *Freeman v. Con–Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001)). Additionally, while this court is of course bound by the Commission's determinations as to the credibility of witnesses and the weight to be given their testimony, this case turns on whether the claimant rebutted the presumption that the accident was substantially occasioned by the use of marijuana, as required by section 11–9–102(4)(B)(iv).

In the recent case of *Gentry v. Ark. Oil Field Servs., Inc.*, 2011 Ark. App. 786, 2011 WL 6189483, this court recognized that the mere presence of illegal drugs does not preclude an award of benefits without a direct causal link between the drugs and the injury. In the first appeal, *Gentry v. Ark. Oil Field Servs., Inc.*, 2011 Ark. App. 306, 2011 WL 1571831, this court reviewed the denial of benefits for Gentry's ankle that was injured when heavy oil-rig pipes rolled into him and he subsequently tested positive for illegal drugs. The case was remanded to the Commission for additional findings after this court noted that, while the issue of whether Gentry had ingested illegal drugs had been resolved against him, there was a second question: whether Gentry "rebutted the presumption that his accident or injury was substantially occasioned by his ingestion of illegal substances—a question regarding the direct causal link." *Id.* at 2. Following remand, this court concluded that the Commission had again failed to consider the causation issue and reversed and remanded for an award of benefits. As in the present case, the issues of credibility had no bearing on the issue of causation.

The uncontroverted evidence is that appellant had used this torch to open similar barrels without incident on other occasions; it is of no consequence that he may have been instructed to use the air chisel and some witnesses had never seen him use the cutting torch to open barrels. Accepting that appellant used marijuana on

the morning of the accident, there was no evidence that Prock was impaired at the time of his injury. Indeed, his employer Eastwold testified that when he talked to Prock while he was in his vehicle immediately before the accident, he did not discern that Prock was impaired, or he would not have allowed him to continue to work. Again, there was no evidence that any impairment caused this accident. Accordingly, I do not believe the Commission's decision is supported by substantial evidence because reasonable minds could not conclude that the accident was substantially occasioned by appellant's drug use. I would reverse and remand for an award of benefits.

VAUGHT, C.J., and HOOFMAN, J., join in this dissent.

JOSEPHINE LINKER HART, Judge, concurring.

The Commission found that Greg E. Prock failed to rebut the statutory presumption that his accident was substantially occasioned by his use of a controlled substance. To my mind, what is more telling of Prock's intoxication was his failure to vent the barrel to determine whether it contained a combustible substance and to exhaust any gases that had built up in the barrel. Certainly, no one testified that it was a common practice to not examine a barrel for combustible substances before using an acetylene torch to cut into it. Accordingly, I concur in the majority's decision to deny benefits.